PEOPLE v SMOLA

Docket No. 100147. Submitted June 21, 1988, at Detroit. Decided September 23, 1988.

Acting on a tip that David E. Smola was growing marijuana at his home in Detroit, state police officers proceeded to Smola's home. The rear yard was surrounded by a six-foot high wooden fence. A public alleyway ran behind the property. The state police officers drove into the alleyway. The officers then observed what they believed to be marijuana growing in the yard by looking through a gap in the fence and looking over the fence by standing on the bumper of their automobile. On the basis of those observations the officers went to the house, knocked on the door, received Smola's consent to search his yard, and seized the plants. Smola was charged with possession of marijuana with intent to deliver and was bound over on that charge to Recorder's Court of Detroit. Defendant filed a motion to suppress, arguing that the seizure of the marijuana plants was tainted by the original observation of the plants by means of acts that violated defendant's constitutional right to privacy. The trial court, Henry L. Heading, J., granted the motion to suppress and quashed the information. The people appealed.

The Court of Appeals *held:*

Defendant had no reasonable expectation of privacy under these circumstances where the yard, although surrounded by a fence, could easily be observed from a spot accessible to the public.

Reversed.

SEARCHES AND SEIZURES — RIGHT OF PRIVACY — FENCED YARDS.

An individual can have no reasonable expectation of privacy from police observation of activities in his backyard where the backyard is surrounded by a six-foot high fence and is located adjacent to a public thoroughfare; accordingly, an individual's right of privacy does not render improper observation by a

REFERENCES

Am Jur 2d, Searches and Seizures § 20.

See the Index to Annotations under Marijuana; Search and Seizure; Yards.

police officer of marijuana growing in the individual's backyard where the officer observed the marijuana by looking over a six-foot high fence by standing on the bumper of a police car while it was parked in a public alley adjacent to the yard.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, for the people.

*Richard M. Lustig,* for defendant.

Before: CYNAR, P.J., and SULLIVAN and J. R. ERNST,* JJ.

PER CURIAM. The people appeal as of right from an order of the trial court granting defendant's motion for the suppression of evidence and quashing the information. We reverse.

Having received a tip that marijuana was being grown at defendant's home, Michigan State Police Trooper Donald Harris and Detective Sergeant Marie Wallakes proceeded to that location. Upon arrival, the officers observed that the back yard was enclosed with a six-foot high wooden fence, attached to the house on one side with a gate. Trooper Harris drove into the alleyway behind the house and observed much green foliage in the yard. He got out of the car, looked through a gap in the fence and saw what he believed to be marijuana plants. Trooper Harris went back to his car and stood on the bumper to obtain a better view. From this vantage point he could see that the whole back yard was filled with growing marijuana plants. Detective Wallakes also saw the marijuana both by looking through the gap in the fence and by standing on the bumper of the car.

* Circuit judge, sitting on the Court of Appeals by assignment.

Following these observations, Officers Harris and Wallakes went up to the house and knocked. Defendant came to the door and, according to the officers, consented to a search of his back yard and a seizure of the plants after being advised of his rights. The defendant was also told that there was usually no prosecution in these cases but that the decision was up to the prosecutor. Defendant, however, testified that he was not advised of his rights and that he was told he would not be prosecuted if he agreed to a search.

The trial court held, inter alia, that the marijuana was growing within the curtilage of the defendant's home, that the back yard was purposely enclosed by a fence, and that the defendant had a reasonable expectation of privacy in his back yard. An order was thereupon entered granting defendant's motion to suppress the evidence and quash the information.

An essentially identical scenario was before the United States Supreme Court in *California v Ciraolo,* 476 US 207; 106 S Ct 1809; 90 L Ed 2d 210 (1986), where the accused had enclosed his back yard with a six-foot outer fence and a ten-foot inner fence. Acting on an anonymous telephone tip, two police officers trained in marijuana identification obtained a private plane and flew over the accused's house at an altitude of one thousand feet. From the air the officers clearly identified and photographed growing marijuana plants eight to ten feet tall. A search warrant based on the officers' observations resulted in the seizure of seventy-three marijuana plants and the subsequent prosecution of the accused. The respondent argued that, because his yard was in the curtilage of his home, no governmental aerial observation was permissible without a warrant. Accepting that the defendant "manifested a subjective expectation

of privacy" from observation of his back yard activity, the Court stated that " '[t]he test of legitimacy is not whether the individual chooses to conceal assertedly "private" activity,' but instead 'whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment.' " 476 US 212, citing *Oliver v United States,* 466 US 170; 104 S Ct 1735; 80 L Ed 2d 214 (1984). The *Ciraolo* Court further held:

> That the area is within the curtilage does not itself bar all police observation. The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares. Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible. [476 US 213.]

The Court thereafter declared that one who grows illicit drugs in his back yard is not entitled to assume that such unlawful conduct will not be observed "by a passing aircraft—or by a power company repair mechanic on a pole overlooking the yard." 476 US 214-215. Moreover, "[t]he fact that a ground-level observation by police 'focused' on a particular place is not different from a 'focused' aerial observation under the Fourth Amendment." 476 US 214, n 2. See also *United States v Broadhurst,* 805 F2d 849 (CA 9, 1986), citing *Ciraolo, supra,* upholding a search warrant for growing marijuana plants based on aerial observations through the sides of a greenhouse.

We conclude that defendant could have had no reasonable expectation that a wooden fence which

is six feet high would shield his back yard activity from observations by tall passersby, from occupants of aircraft traveling through overhead public airspace, or, indeed, from a police officer standing on the bumper of his automobile on the adjacent public thoroughfare.

The order of the trial court dismissing the case is reversed and the matter remanded for further proceedings consistent with this opinion.