Racine County and Kevin B. Van Kampen,
Racine County Family Court Commissioner
and Director of Family Court Counseling,
Petitioners-Respondents-Petitioners,

v.

International Association of Machinists
and Aerospace Workers District 10, AFL-CIO,
Respondent-Appellant.

Supreme Court

*No. 2006AP964. Oral argument January 15, 2008.
—Decided June 26, 2008.*

2008 WI 70

(Also reported in 751 N.W.2d 312.)

For petitioners-respondents-petitioners there were briefs by *Charles B. Palmer, Kristi S. Nelson Foy, Amy O. Bruchs,* and *Michael Best & Friedrich LLP,* Milwaukee, and oral argument by *Charles B. Palmer.*

For the respondent-appellant there was a brief by *Matthew R. Robbins, Asmaa Abdul-Haqq,* and *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.,* Milwaukee, and oral argument by *Matthew R. Robbins.*

An amicus curiae brief was filed by *Andrew T. Phillips, Ronald S. Stadler, Gina M. Ozelie,* and *Stadler, Centofanti & Phillips, S.C.,* Mequon, on behalf of the Wisconsin Counties Association.

¶ 1. N. PATRICK CROOKS, J. This is a review of

an unpublished decision of the court of appeals[1] that reversed and remanded an order of the Circuit Court for Racine County, Judge Wilbur W. Warren III.

¶ 2. Petitioners, Racine County and Kevin B. Van Kampen (Van Kampen), who is the Racine County Family Court Commissioner and Director of Family Court Counseling Services, (collectively, Racine County), seek review of an unpublished decision of the court of appeals. The court of appeals' decision reversed and remanded the order of the Circuit Court for Racine County, Judge Wilbur W. Warren III of the Circuit Court for Kenosha County, presiding.[2] The Respondent is the International Association of Machinists and Aerospace Workers, District 10, AFL-CIO (IAM). This case centers on whether the circuit court properly vacated the arbitration award here that allegedly violated statutory law and constitutional separation of powers principles, and also whether the arbitrator exceeded her authority under Wis. Stat. § 788.10 (2005–06)[3] by not considering Wis. Stat. § 767.405 and the relevant case law. Wisconsin Stat. § 767.405(1m) states that the circuit court judges of a county shall appoint, subject to the approval of the chief judge, a director of family court services.

---

[1] *Racine County v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 10,* No. 2006AP964, unpublished slip op. (Wis. Ct. App. May 9, 2007).

[2] Judge Warren was assigned to preside over the case after all of the Circuit Court Judges for Racine County recused themselves. It is reasonable to infer from this fact in the record that they did so because there could be a conflict of interest perceived if they ruled on these matters, because the appointment authority of those circuit court judges was clearly involved here.

[3] All further references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

The director then has the responsibility to employ a staff to perform family court mediation services, legal custody study services, and physical placement study services. Wis. Stat. § 767.405(2). The statute specifically states that the director may contract "with a person or public or private entity" to provide the required services. Wis. Stat. § 767.405(2)(b).[4]

¶ 3. We reverse the decision of the court of appeals. We hold that the circuit court properly vacated the arbitration award here that was contrary to statutory law, specifically Wis. Stat. § 767.405, and to constitutional separation of powers principles. We also hold that the arbitration award in this case was properly vacated because the arbitrator exceeded her authority under Wis. Stat. § 788.10(1)(d) by not considering § 767.405 and the relevant case law.

I

¶ 4. In the autumn of 2003, family court social workers/case managers, Donald LaFave (LaFave), Judith Berndt (Berndt), and Janet Vuvunas (Vuvunas) met with Van Kampen and were advised of the possibility of early retirement or layoff. LaFave and Berndt were told that their positions would be eliminated and that there was the possibility of working after their retirement as social workers for the county on a contract basis. Vuvunas was told that her position would be

---

[4] Wisconsin Stat. § 767.405(2)(b) states that the director shall "[c]ontract under sub. (3)(c) with a person or public or private entity to perform mediation and to perform any legal custody and physical placement study services authorized under sub. (14)." Wisconsin Stat. § 767.405 was previously numbered Wis. Stat. § 767.11, but the statutory language remains unchanged.

reduced to part-time and that, if she did not accept part-time status or exercise her bumping rights for another full-time county employee position, she would be placed on layoff status. Vuvunas decided not to accept a part-time position, and she also elected not to exercise her bumping rights. Indeed, Racine County's Human Resources Director, Karen Galbraith (Galbraith), testified at the arbitration hearing that Vuvunas had specifically requested a voluntary layoff rather than exercise her bumping rights, and the county granted Vuvunas' request. Galbraith further testified that, if Vuvunas had exercised her bumping rights, no employee would have been laid off because there were vacant positions available. As a result, Vuvunas was placed on layoff status.[5] The collective bargaining agreement that was in effect between Racine County and the IAM specifically stated that it covered social workers/case managers who worked in the family court.

¶ 5. Van Kampen met with LaFave and Berndt, in addition to John Engel (Engel), who was a retired county social worker supervisor. Van Kampen advised the three individuals that the county executive had directed him to provide the statutorily-mandated services by entering into individual contracts with social workers/case managers.[6] LaFave retired on December

---

[5] These moves were the result of the Racine County Executive's desire to move the family court social worker/case manager positions off of the tax levy to spare layoffs elsewhere in the county.

[6] The dissent repeatedly refers to "actions taken by the County" and also refers to our not "focusing on the County's actions and instead attribut[ing] those actions to the director of family court services, Van Kampen." Dissent, ¶ 39. We are satisfied that the plans were carried out with the director's approval and with the director's consultation with the circuit

30, 2003, and Berndt was allowed to stay on as a regular employee until she reached retirement age on February 6, 2004. After waiting at least the minimum of one month after retirement that was required under Wisconsin pension law for former county employees to provide services under contract with the county, LaFave and Berndt entered into family court counseling services agreements and started working for the county as independent contractors on February 3, 2004, and March 8, 2004, respectively. Van Kampen continued to supervise these two independent contractors, who retained the same duties and pay.[7] Engel also entered into a similar services agreement.

¶ 6. On March 8, 2004, the IAM filed a grievance on the matter against Racine County, and the case proceeded to arbitration on October 26, 2004. The issue at arbitration was framed by Arbitrator Janice Frank-

court judges for whom he worked. We note again that all of the Racine County Circuit Court Judges recused themselves from this case. It is a reasonable inference from the record before us that they were all involved in what was occurring in regard to the Family Court Counseling Services group.

The dissent also errs in stating, "The arbitration decision and Van Kampen's testimony make it clear that it was the County, not Van Kampen, that required the social worker positions to be filled by subcontractors." *Id.*, ¶ 65. In contrast to the dissent's assertion, the record before us clearly shows that Racine County did not dictate to Van Kampen how the positions were to be filled. Racine County's postarbitration brief to the arbitrator discusses at great length the various options that Van Kampen considered in order to provide the statutorily-mandated services. This contradicts the dissent's assertion that Van Kampen was not exercising his statutory authority.

[7] As retirees, LaFave, Berndt, and Engel were entitled to health insurance, but the county did not have to pay employment taxes or provide any other benefits.

man as whether Racine County had violated the collective bargaining agreement's provisions when it entered into service agreements with the retired employees. The collective bargaining agreement stated that the IAM was "the sole and exclusive bargaining representative for all regular full time and regular part time . . . Social Workers/Case Managers who work in Family Court . . . ."

¶ 7. On January 19, 2005, the arbitrator ruled in favor of the IAM, sustaining the grievance.[8] The arbitrator specifically stated in her award that she made "no attempt . . . to either interpret or apply statutory law." The arbitrator concluded that Racine County had improperly displaced three positions from the bargaining unit in violation of the collective bargaining agreement. The arbitrator found that Racine County replaced three bargaining unit positions with independent contractors who provided identical services to take the positions off of the tax levy. The arbitrator ordered Racine County to cease and desist from continuing the service contracts, and she also prohibited Racine County from entering into new service contracts that would displace any court services social worker/case manager bargaining unit

---

[8] The dissent criticizes the majority opinion for spending "a scant four paragraphs explaining the arbitrator's determinations." Dissent, ¶ 42. The dissent then goes on to state, "The abbreviated treatment given by the majority to the actual decision of the arbitrator leaves a void." *Id.*, ¶ 45. The dissent also criticizes us for "ignor[ing] the arbitrator's factual and legal determinations." *Id.*, ¶ 57. We disagree with the dissent's assertions. Our treatment of the arbitrator's award is proper because the entire award was invalid. Furthermore, in contrast to the dissent's assertion, our application of the standard of review is appropriate because the arbitrator exceeded her powers in the present case. *Id.*, ¶ 56.

positions. Because the arbitrator found that LaFave and Berndt had retired, she specifically stated that the award would not reinstate them, which left both individuals, along with Engel, without an ability to work for Racine County. This was so because the arbitrator ordered Racine County to "cease and desist from continuing existing Service Agreements or [from] entering into new Agreements which displace[d] . . . bargaining unit positions . . . ." The arbitrator also required Racine County to make the IAM whole for the damages that it had sustained (including lost dues), its expenses in pursuing the matter, and lost benefits and wages without a loss of seniority.

¶ 8. Racine County filed a petition in the circuit court to vacate the arbitration award. On February 5, 2006, the circuit court granted Racine County's petition and vacated the award. The circuit court held that Van Kampen was paid by the county, but he was hired by and reported to the Circuit Court Judges in Racine County, subject to the approval of the Chief Judge of the District. The circuit court also held that Wis. Stat. § 767.405(2) gave the director discretion on how to provide the services in question, and the director was free to fill the positions with county employees, independent contractors, or a mix of both options. The circuit court determined that the three positions were not bargained for positions and that the positions were vacant by virtue of retirements and a voluntary layoff. As a result, the director had discretion in filling these statutorily mandated positions. Accordingly, the union had no vested right in the three positions, and the union could not tell the director how to fill the positions. The circuit court determined that the case was a separation of powers case, and the arbitrator's award ignored the ramifications of Wis. Stat. § 767.405 by

eviscerating the director's statutory authority and discretion to fill the social worker/case manager positions. The circuit court held that the award, which stated that the director could not enter into any new service contracts to fill the positions, rendered the statute meaningless. The circuit court also determined that: (1) the collective bargaining agreement could not supersede statutory and judicial authority; and (2) the arbitrator's award, which attempted to do so, was invalid because the arbitrator exceeded her powers under Wis. Stat. § 788.10(1)(d). The circuit court relied on the decisions in *Barland v. Eau Claire County*, 216 Wis. 2d 560, 575 N.W.2d 691 (1998), *Iowa County v. Iowa County Courthouse/Social Services Employees, Local 413,* 166 Wis. 2d 614, 480 N.W.2d 499 (1992), and *Crawford County v. WERC,* 177 Wis. 2d 66, 501 N.W.2d 836 (Ct. App. 1993).

¶ 9. The IAM appealed the circuit court's decision. A divided court of appeals reversed the circuit court's order and remanded the case to the circuit court to reinstate the arbitrator's award. The majority in the court of appeals held that the circuit court had erred as a matter of law in vacating the arbitrator's award. Judges Daniel P. Anderson and Richard S. Brown were in the majority, and Judge Neal P. Nettesheim dissented. Judge Nettesheim agreed with the circuit court's conclusion that the arbitrator had exceeded her powers by failing to consider the relevant statutory law. He saw this case as one that was controlled by the *Iowa County* decision, where the register in probate position was covered by a collective bargaining agreement. In his dissent, Judge Nettesheim stated:

Like the statutory authority conferred by Wis. Stat. § 851.71 on the *Iowa County* circuit judge to appoint a register in probate, here director Van Kampen, acting

517

as an agent of the judiciary, has the statutory authority under Wis. Stat. § 767.405(2)(a) to employ staff to provide the mandated statutory services. And finally, like the *Iowa County* judge, director Van Kampen, although the hiring authority, is not the employer. Thus the question posed here is the same as that in *Iowa County*—when the positions became vacant, was Van Kampen bound by the collective bargaining agreement, or was he free to exercise his statutory authority to employ outside the agreement? *Iowa County* answers in favor of the latter.

*Racine County v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. 10,* No. 2006AP964, unpublished slip op., ¶ 20 (Wis. Ct. App. May 9, 2007) (Nettesheim, J., dissenting) (footnote omitted). Judge Nettesheim was satisfied that this case implicated separation of powers concerns, given that Van Kampen was an agent of the judicial branch.

¶ 10. Racine County and Van Kampen petitioned for review of the court of appeals' decision in this case, and we granted that petition.

## II

¶ 11. The standard of review when reviewing an arbitrator's award generally is very limited. *Lukowski v. Dankert,* 184 Wis. 2d 142, 149, 515 N.W.2d 883 (1994); *see also City of Madison v. Madison Prof'l Police Officers Ass'n,* 144 Wis. 2d 576, 586, 425 N.W.2d 8 (1988). When a court is reviewing an arbitrator's award, its function is essentially supervisory in nature, to ensure that the parties to the collective bargaining agreement received the arbitration process for which they bargained. *Lukowski,* 184 Wis. 2d at 149. However, a court *must* overturn an arbitrator's award when the arbitrator

exceeded his or her powers. Wis. Stat. § 788.10(1)(d). An arbitrator exceeds his or her powers when the arbitrator demonstrates either "perverse misconstruction" or "positive misconduct," when the arbitrator manifestly disregards the law, when the award is illegal, or when the award violates a strong public policy. *Lukowski,* 184 Wis. 2d at 149 (citations omitted). Whether the arbitrator's award meets this standard is a question of law, which a court reviews de novo. *Iowa County,* 166 Wis. 2d at 618.

## III

¶ 12. The first issue is whether the circuit court properly vacated the arbitration award in this case. The arbitration award allegedly violated both statutory law and constitutional separation of powers principles.

¶ 13. On review, Racine County argues that the arbitrator's award improperly conflicted with statutory law and with the constitution, thus implicating separation of powers principles. Racine County contends that the award here undermines the separation of powers set forth in Wis. Stat. § 767.405 by voiding contracts that the director, a representative of the judicial branch, entered into under that statute, by prohibiting the director from contracting with any other social workers to provide the statutorily-required services, and by ordering, instead, that the union and the county negotiate for the employment of social workers/case managers.

¶ 14. Racine County also argues that the arbitrator erroneously stripped the Racine County Circuit Court Judges of their ability, through their designated director, to contract with social workers to provide the statutorily-mandated services. Racine County argues

519

that this action was improper because a collective bargaining agreement, or an arbitrator's award that interprets the collective bargaining agreement, may not trump statutory authority, such as Wis. Stat. § 767.405. Racine County also argues that the arbitrator's award substantially impacts families in Racine County because the award has the effect of voiding hundreds of court orders that appointed the three family court social workers/case managers to specific cases. As a result, the Racine County family court system will be disrupted by this wholesale change in its operations, and child custody and placement decisions will be indefinitely delayed if the court of appeals' decision is not reversed. Racine County argues that the circuit court properly vacated the arbitrator's award.

¶ 15. On review, the IAM argues that the arbitrator's factual findings do not conflict with the director's statutory authority or the judiciary's constitutional authority. The union also asserts that the award does not present separation of powers concerns because it simply prevents Racine County from relabeling employees as independent contractors to evade its obligations under the collective bargaining agreement. As a result, the IAM claims that the arbitration award here cannot be overturned by the court, and the union also contends that the majority in the court of appeals was correct in upholding the award.

¶ 16. For the reasons discussed in detail below, we are satisfied that the circuit court properly vacated the arbitration award here because it was contrary to statutory law, specifically Wis. Stat. § 767.405, and to constitutional separation of powers principles.

¶ 17. Statutory authority and responsibilities are provided in Wis. Stat. § 767.405. Van Kampen, the

director, is an agent of the circuit court judges, and the director's statutory authority and responsibilities are to be carried out under the supervision of the circuit court judges. As a result, the arbitrator's award here improperly invaded the judicial branch's statutory authority under § 767.405. A collective bargaining agreement cannot trump such statutory, judicial branch authority because doing so would violate separation of powers principles. A collective bargaining agreement may not abrogate a statutory function of the judicial branch. Any such provisions in a collective bargaining agreement are invalid and unenforceable.[9]

---

[9] We note that *Barland v. Eau Claire County,* 216 Wis. 2d 560, 575 N.W.2d 691 (1998), is distinguishable from the present case because *Barland* was premised on the inherent powers of the judicial branch, not on a conflict with governing statutory law. In *Barland,* this court held that circuit court judges had the "exclusive, inherent constitutional authority to prevent the unilateral removal of their judicial assistants by way of a collective bargaining agreement between [a] county government and its employees." *Id.* at 565. In contrast, in the present case, the arbitration award did not implicate the inherent powers of the judicial branch. Instead, the arbitration award in the present case conflicted with Wis. Stat. § 767.405.

We further note that our recent *Kocken* decision also is distinguishable from the present case. *Kocken v. Wis. Council 40, AFSCME,* 2007 WI 72, 301 Wis. 2d 266, 732 N.W.2d 828. In *Kocken,* we held that a county sheriff did not have the authority, contrary to a collective bargaining agreement, to hire and fire the personnel who provided the county jail's food service. *Id.,* ¶ 4. We so held because that right was "not a time immemorial, principal, and important duty that characterizes and distinguishes the office of [the] sheriff," and, as a result, that ability was "not within the Sheriff's constitutional powers." *Id.* The sheriff was not given hiring and firing authority in regard to such personnel by statute either, and, therefore, he was subject to the restrictions of the relevant collective bargaining agree-

521

¶ 18. As emphasized in the dissent of Judge Nettesheim in the court of appeals' decision, and also by Judge Warren in the circuit court's decision, we are satisfied that this case is very similar to our decision in *Iowa County*. In our *Iowa County* decision, we held that a collective bargaining agreement could not supersede a circuit court judge's statutory authority to appoint a register in probate. *Iowa County*, 166 Wis. 2d at 618. The position of register in probate was included in the union-represented bargaining unit. *Id.* at 617. When that position became vacant, under the authority conferred by Wis. Stat. § 851.71, the circuit court judge appointed a new register in probate, without posting the vacancy as required by the collective bargaining agreement. *Id.* In *Iowa County*, we agreed with the circuit court and held that a "collective bargaining agreement cannot supersede the statutory authority given to the circuit court judge." *Id.* at 618. This court pointed out that a circuit court judge, while he or she is the hiring authority, is neither a county employee nor an agent of the county. *Id.* at 619–20. As a result, a circuit court judge does not act in the municipal employer's role. *Id.* Consequently, we stated that a circuit court judge "is not a party to and cannot be bound by the provisions of a collective bargaining agreement entered into by Iowa County and [the union] which purport[s] to regulate the appointment of a register in probate." *Id.* at 620 (footnote omitted).

---

ment. *Id.* This case is distinguishable from *Kocken* because, in the present case, the power in question was statutorily given to the judicial branch by Wis. Stat. § 767.405 and was not allegedly a constitutional power. As a result, unlike *Kocken*, in the present case, the legislature, in § 767.405, gave the judicial branch the authority to fill the relevant positions by using independent contractors.

¶ 19. In a manner analogous to the statute at issue in *Iowa County,* Wis. Stat. § 767.405 gives the director the authority to employ staff to provide the services mandated by the statute, even though the social worker/case manager positions in question were covered by a collective bargaining agreement.[10] Similar to the circuit court judge in *Iowa County,* Van Kampen was acting as the judiciary's agent and was exercising statutorily-given authority to hire and employ staff to provide the statutorily-mandated services. Van Kampen, as the agent of the Racine County judiciary, cannot have statutorily-granted rights bargained away through a collective bargaining agreement. Also similar to the circuit court judge in *Iowa County,* Van Kampen, while the hiring authority, is not a municipal employer under Wis. Stat § 111.70(1)(j). As a result, the director, who is a representative of the judicial branch, is not bound by the collective bargaining agreement when exercising the statutory authority to fill the vacated positions. We are satisfied that our decision in the present case is controlled by our earlier *Iowa County* decision.

¶ 20. We also are satisfied that the present case is analogous to the court of appeals' decision in *Crawford County,* 177 Wis. 2d at 66. In *Crawford County,* the court of appeals extended the reasoning of our *Iowa*

---

[10] Prior to Wis. Stat. § 767.405 being enacted by 1987 Wis. Act 355, the social workers/case managers here were employed by Racine County under the collective bargaining agreement, providing services similar to those now covered by the statute. As was discussed by the attorney representing Racine County at oral argument before this court, when § 767.405 was enacted, these employees continued to provide such services, but then did so under the supervision of the director of family court services. The attorney representing the union did not challenge this historical recitation.

*County* decision to encompass "the authority of the register of deeds and the clerk of court to appoint *and* discharge their deputies . . . ." *Crawford County*, 177 Wis. 2d at 69. As a result, the court of appeals overturned a Wisconsin Employment Relations Commission (WERC) decision that had upheld, as a mandatory subject of bargaining, the union's proposal "to include the appointed deputies of the Crawford County Register of Deeds and Clerk of Circuit Court . . . under all terms and conditions of the union's collective bargaining agreement . . . ."[11] *Id.* at 68. The court of appeals reached that decision because the clerks of the circuit courts were empowered to appoint their deputies under Wis. Stat. § 59.38(1) and because the county registers of deeds had similar authority under Wis. Stat. § 59.50. *Id.* at 71. Both statutes gave those officials the power to appoint deputies who would serve at their pleasure. *Id.* In overturning the WERC decision, the court of appeals held that the union's proposal would effectively abrogate the officials' statutory authority. *Id.* at 73. As a result, the WERC decision was not valid because it did "not merely restrict the officials' statutory appointive powers, it transfer[red] them to others." *Id.* at 75. We are satisfied that the arbitrator's award in the present case would similarly abrogate the director's statutory authority as the agent of the circuit court judges and that the arbitrator's award must, therefore, be vacated.

---

[11] The *Crawford County* court held, however, that whether the administrative law clerk position in the district attorney's office should be included under all of the terms and conditions of the collective bargaining agreement was a mandatory subject of bargaining. *Crawford County v. WERC*, 177 Wis. 2d 66, 68–69, 501 N.W.2d 836 (Ct. App. 1993). The court so held because, unlike the other two positions, there was no specific statute that gave a district attorney an ability to appoint deputies who would serve at his or her pleasure. *Id.* at 71–72.

¶ 21. We are satisfied that Wis. Stat. § 767.405 and the collective bargaining agreement cannot be harmonized, as the IAM contends. The collective bargaining agreement, and the arbitration award that resulted from it, attempt to take away specific statutorily-granted rights of the director as the agent of the Racine County Circuit Judges. As we have noted, Wis. Stat. § 767.405(1m) creates the director of family court services position and directs the circuit court judges in each county, subject to the approval of the chief judge, to appoint the director. Wisconsin Stat. § 767.405(2)(b) then permits the director to contract "with a person or public or private entity to perform mediation and to perform any legal custody and physical placement study services . . ." that the statute authorizes.

¶ 22. It was pursuant to this statutory authority that Van Kampen contracted with Berndt, LaFave, and Engel after Racine County eliminated the three original positions. It is this statutory right to hire, as a judicial branch agent, which the collective bargaining agreement and the arbitration award erroneously attempted to take away from Van Kampen. Any provisions of a collective bargaining agreement that attempt to take away such statutory authority are invalid and unenforceable. In essence, by ordering the director to cease and desist from using the current independent contractors or any future independent contractors, the arbitrator exceeded her authority and violated separation of powers principles by putting into jeopardy the effective functioning of the judicial branch, including apparently more than 450 pending Racine County family court matters.[12]

---

[12] This issue and these figures were presented at oral argument before this court.

¶ 23. Because of the directives of Wis. Stat. § 767.405, this case is not merely a contract dispute between Racine County and the IAM, and this case raises substantial separation of powers concerns. Van Kampen is an agent of the judicial branch, and Wis. Stat. § 767.405 vests discretion in him on how to deliver the statutorily-mandated services. If Van Kampen had initially filled the positions in question here, he clearly could have used independent contractors. The positions were not bargained-for positions, and they were created by statute. Accordingly, the circuit court was correct in holding that Van Kampen "had the authority under the statute to either hire employees to do the work, contract out to do the work or to combine the two methods of providing services in his discretion, subject only to the oversight of the Judiciary that appointed him." There is no requirement in § 767.405 that the services be provided by county employees, and subcontracting is clearly allowable under the statute.[13]

---

[13] The dissent argues that Vuvunas' "layoff, therefore, [was] a 'direct result of such subcontracting.'" Dissent, ¶ 71. The record before us on review shows that the dissent's contention is erroneous. As we noted previously, Racine County's postarbitration brief, which is in the record before us on review, indicates that Racine County's Human Resources Director, Karen Galbraith, testified at the arbitration hearing that "Ms. Vuvunas requested a voluntary layoff rather than exercise her bumping rights. That request was granted. If Ms. Vuvunas had exercised her bumping rights, no employee would have been laid off because there were vacant positions available." The record before us on review also shows that Galbraith further testified at the arbitration hearing "that there were vacant positions available into which [all three] employees could have bumped, which would have resulted in no layoffs occurring as a result of eliminating these positions."

¶ 24. Regardless of whether the empty positions occurred because of retirement or layoff, the circuit court judges and their agent, the director, had the statutory duty to provide the relevant services, and they had the statutory authority to fill the positions in any manner allowable under the statute. Wisconsin Stat. § 767.405 does not say that the director is authorized to fill the relevant positions only when they are vacant, and to interpret the statute in such a manner would be contrary to its plain meaning and would read into the statute language that is not there. *See State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. This analysis also is consistent with additional case law. *See Winnebago County v. Winnebago County Courthouse Employees Ass'n,* 196 Wis. 2d 733, 540 N.W.2d 204 (Ct. App. 1995).

¶ 25. In *Winnebago County,* the court of appeals held that represented employees might have contrac-

Accordingly, as the aforementioned facts from the record before us on review indicate, the situation of Vuvunas does not appear to be legally distinguishable from the situations of LaFave and Berndt. All three individuals had bumping rights under the collective bargaining agreement that they could have exercised, and Vuvunas apparently could have used those rights to obtain another full-time county position but chose not to do so. As the attorney for Racine County noted at oral argument, Vuvunas would not have been fired or discharged. Indeed, Vuvunas apparently did not grieve or make any objections whatsoever to her voluntary layoff. In its July 8, 2005 brief to the circuit court, Racine County stated, "As a matter of public record, her husband, Emmanuel (Butch) Vuvunas, a Racine County judge, retired at around the same time. She did not participate in the grievance or make objections to her voluntary layoff, presumably because it fit her personal goals at the time." The circuit court decision determined that the three positions were vacant by virtue of retirement and voluntary layoff.

tual rights related to their employment, but such rights do not include a guarantee of a specific position over which the judicial branch maintained appointment and removal power. *Id.* at 741. Thus, while a circuit court clerk could not terminate the employment of a person in the position of a judicial assistant without following the conditions and terms of the collective bargaining agreement, the judicial assistant could be removed from that position because the position itself was subject to the appointment and removal power of the judicial branch. *Id.* at 736. The court of appeals stated, "A court's right to remove and appoint a staff member is an entirely different issue than the subsequent termination of that staff member's employment." *Id.* at 741. The court then held that a "court's right to remove members from his or her staff is not subject to collective bargaining." *Id.* at 741, n.4.

¶ 26. We are satisfied that the court of appeals' decision in *County of Eau Claire v. AFSCME Local 2223*, 190 Wis. 2d 298, 526 N.W.2d 802 (Ct. App. 1994), does not conflict with our holding here. The *County of Eau Claire* decision involved the Eau Claire County Clerk of Court and the Eau Claire County Register of Deeds deputizing "virtually every employee in their respective offices" in an alleged attempt to exempt those employees from coverage under the collective bargaining agreement. *Id.* at 300. Unlike the present case, the employees in the *County of Eau Claire* decision were continuing employees who, other than being deputized, did not see any change in their employment status. *Id.* The *County of Eau Claire* decision did not involve voluntary layoffs, retirements, or any questions on how positions were to be filled.

¶ 27. We are satisfied that Racine County's reasons for terminating the positions in question are not

relevant to the legal issues here. Whether Racine County eliminated the positions in question for fiscal reasons or otherwise, it does not change the fact that Van Kampen, who was acting on behalf of the Racine County Circuit Court Judges, had the statutory authority to hire any needed replacement staff to perform the statutorily-mandated duties and functions of the family court services agency.

¶ 28. As Judge Nettesheim aptly noted in his dissent in the court of appeals:

> Based on Wis. Stat. § 767.405, the trial court saw this case not merely as a contract dispute between the union and the county, but also as a case that raised separation of powers concerns. The court correctly observed that director Van Kampen serves as an agent of the judicial branch of government and that the statute vests discretion in the director as to how the services mandated by the statute should be delivered. The court also correctly noted that when initially filling the positions at issue, Van Kampen could have used independent contractors and that the employees actually hired were not "bargained for positions." From this, the court concluded "that the Director had the authority under the statute to either hire employees to do the work, contract out to do the work or to combine the two methods of providing services in his discretion, subject only to the oversight of the Judiciary that appointed him."

*Racine County*, No. 2006AP964, unpublished slip op., ¶ 17 (Nettesheim, J., dissenting). We agree with Judge Nettesheim's analysis, as well as that of Judge Warren, on this issue.

¶ 29. In summary, we hold that the circuit court properly vacated the arbitration award here, because it was contrary to statutory law and to constitutional separation of powers principles.

529

IV

¶ 30. The second issue is whether the arbitration award was properly vacated, because the arbitrator exceeded her authority under Wis. Stat. § 788.10 by not considering Wis. Stat. § 767.405 and the relevant case law.

¶ 31. On review, Racine County argues that the arbitrator exceeded her authority by improperly disregarding the law, specifically Wis. Stat. § 767.405. Racine County also contends that the majority in the court of appeals erred by misinterpreting the scope of its review under Wis. Stat. § 788.10. Racine County argues that the majority improperly limited its review to whether the arbitrator reasonably interpreted the contract, and Racine County contends that the implications of § 767.405 should have been addressed by the arbitrator. Racine County argues that the majority's refusal in the court of appeals to consider the statutory issues involved in this case effectively voided § 788.10 because that statute would be meaningless if the courts were restricted from considering such statutory provisions when determining whether an arbitrator exceeded his or her powers. Racine County contends that the arbitrator exceeded her authority and manifestly disregarded the law when she failed to consider the impact of § 767.405. As a result, Racine County argues that the circuit court properly vacated the arbitrator's award.

¶ 32. On review, the IAM argues that an appellate court is bound by an arbitrator's factual findings, which, in this case, the IAM claims were "that the Racine County executive engaged in a scheme to misclassify employees as 'independent contractors' to evade the [collective bargaining] agreement." As a result, the union argues that the majority in the court of appeals

was correct in limiting the scope of its review, and the IAM also argues that the arbitrator's failure to consider Wis. Stat. § 767.405 did not result in her exceeding her authority. The IAM contends that the majority in the court of appeals was correct in upholding the arbitration award.

¶ 33. We are satisfied that the arbitration award in the present case must be vacated because the arbitrator exceeded her powers under Wis. Stat. § 788.10(1)(d) when she failed to consider Wis. Stat. § 767.405 and the relevant case law, primarily the decisions in *Iowa County* and *Crawford County*. Specifically, the award here must be vacated because the arbitrator exhibited a manifest disregard for the law by making no attempt to apply or interpret the relevant statutory law, § 767.405. The dissent's assertion that there was "no indication" that the County raised statutory and "separation of powers arguments until the case reached the circuit court" is not accurate. Dissent, ¶ 48. In Racine County's postarbitration brief to the arbitrator, Racine County stated, "Mr. Van Kampen's testimony further indicated that by *statute* the services are funded through three types of fees, and that there's a substantial difference in the ability to use these funds [depending on by whom] the services are being provided . . . ." (Emphasis added.) It must be emphasized that the arbitrator candidly admitted in her award that she made "no attempt . . . to either interpret or apply statutory law."

¶ 34. As we noted above, Wis. Stat. § 788.10(1)(d) requires a court to vacate an arbitrator's award when the arbitrator exceeds his or her powers. An arbitrator exceeds his or her powers when the arbitrator demonstrates either " 'perverse misconstruction' " or " 'positive

misconduct,'" when the arbitrator manifestly disregards the law, when the award is illegal, or when the award violates a strong public policy. *Lukowski,* 184 Wis. 2d at 149–50 (citation omitted). We are satisfied, as a matter of law, that the arbitrator's award failed to meet the required standard. Arbitration awards, such as the one here, must be vacated when they conflict with governing law, as set forth in the constitution, a statute, or the case law interpreting the constitution or a statute. *Id.* at 152–54. The arbitration award here conflicts with the governing law in Wis. Stat. § 767.405.

¶ 35. The majority in the court of appeals erred by failing to consider fully, as allegedly falling outside of the scope of its review, the statutory issue that Racine County properly raised. The majority in the court of appeals erroneously limited its review to the collective bargaining agreement's terms on the grounds that the arbitrator had limited her review to the terms of the collective bargaining agreement. The majority in the court of appeals also erred when it approved of the fact that the arbitrator had not considered the statutory and constitutional issues Racine County presented.

¶ 36. In summary, we hold that the arbitration award in the present case must be vacated because the arbitrator exceeded her authority under Wis. Stat. § 788.10(1)(d) by not considering Wis. Stat. § 767.405 and the relevant case law.

V

¶ 37. We reverse the decision of the court of appeals. We hold that the circuit court properly vacated the arbitration award here that was contrary to statutory law, specifically Wis. Stat. § 767.405, and to constitutional separation of powers principles. We also hold

that the arbitration award in this case was properly vacated because the arbitrator exceeded her authority under Wis. Stat. § 788.10(1)(d) by not considering § 767.405 and the relevant case law.

*By the Court.*—Reversed and remanded to the circuit court for all necessary actions that are consistent with this opinion.

¶ 38. ANN WALSH BRADLEY, J. (*dissenting*). The error of the majority lies in what it avoids. This case involves two actions. The first is the process of eliminating three social worker positions. The second is entering into contracts to fulfill the statutory responsibility of providing social work. Even though the first action, the process of eliminating the positions, is the basis of the arbitrator's award, the majority nevertheless addresses only the second.

¶ 39. This case stems from actions taken by the County. The majority, however, avoids focusing on the County's actions and instead attributes those actions to the director of family court services, Van Kampen. As a result, it subordinates the actions of directors to the demands of the County.

¶ 40. Finally, this case involves an arbitrator's determination that a County employee, Vuvunas, was laid off in direct violation of a collective bargaining agreement. The majority, however, fails to explain why that determination is error, despite vacating the arbitration award.

¶ 41. By failing to address the process by which the County eliminated the three positions, attributing the County's actions to Van Kampen, and failing to address Vuvunas's layoff, the majority ignores the standard of review and the determinations of the arbitrator that this court should not disturb. Despite its claim of

protecting the rights of directors of family court services, who are agents of the circuit courts, the majority's decision ultimately subordinates those rights to the County. I therefore respectfully dissent.

## I

¶ 42. Despite the fact that the arbitration decision, coupled with the collective bargaining agreement, provides the factual basis of this case, the majority spends a scant four paragraphs explaining the arbitrator's determinations. *See* majority op., ¶¶ 4–7. It nevertheless argues that the arbitration award should be vacated because "the arbitrator exceeded her authority and violated separation of powers principles." *Id.*, ¶ 22.[1]

---

[1] The majority explains its limited treatment of the facts and its decision to ignore the arbitrator's factual and legal determinations as following from its determination that "the entire award is invalid." Majority op., ¶ 7 n.8. The reason we review carefully all of the arbitrator's factual and legal determinations is to determine whether the award is valid. The majority's explanation simply assumes the answer to the very question before the court.

Rather than taking the facts as determined below by the fact finder (the arbitrator), the majority has decided to instead find its own "facts." From the circuit judges' recusal, the majority makes a factual determination that Van Kampen consulted with each of the Racine County circuit judges. Majority op., ¶ 5 n.6. From Van Kampen's consideration of "various options" in how to fund subcontractors, the majority concludes that the County did not dictate to Van Kampen that the positions must be eliminated and filled by a subcontractor rather than an employee. *Id.* From the fact that Van Kampen mentioned a statute at the arbitration hearing, the majority concludes that the arbitrator was actually presented with the complex statutory and constitutional questions at issue here. *Id.*, ¶ 33.

¶ 43. The majority maintains that Van Kampen acted under the authority of § 767.405(2)(b)[2] when he "contracted with Berndt, LaFave, and Engel, after Racine County eliminated the three original positions." Majority op., ¶ 22. The director, according to the majority, "is not bound by the collective bargaining agreement when exercising the statutory authority to fill the vacated positions." *Id.*, ¶ 20. Because Van Kampen acted pursuant to this statutory authority, the majority contends that the "collective bargaining agreement and the arbitration award . . . attempted to take away from Van Kampen" the "statutory right to hire" the social workers. *Id.*, ¶ 21.

¶ 44. The consequences of the arbitration award, according to the majority, are dire. It asserts that the award "left [LaFave, Berndt, and Engel] without an ability to work for Racine County." *Id.*, ¶ 7. In so doing the arbitrator "put[] into jeopardy the effective functioning of the judicial branch." *Id.*, ¶ 22.

At best, the evidence cited by the majority is equivocal. More importantly, the facts found by the majority are in dispute. This court is not constitutionally permitted to make factual determinations where the evidence is in dispute, except in appropriate original jurisdiction proceedings. *Wurtz v. Fleischman,* 97 Wis. 2d 100, 107 n. 3, 293 N.W.2d 155 (1980); *Hatleberg v. Northwest Bank Wisconsin,* 2005 WI 109, ¶ 30, 283 Wis. 2d 234, 700 N.W.2d 15. The appropriate course would be to remand for further factual findings rather than making those findings here.

[2] Wisconsin Stat. § 767.405(2) (2005–06) provides that the director of family court services shall:

(a) Employ staff to perform mediation and to perform any legal custody and physical placement study services . . . .

(b) Contract under sub. (3)(c) with a person or public or private entity to perform mediation and to perform any legal custody and physical placement study services . . . .

¶ 45. The abbreviated treatment given by the majority to the actual decision of the arbitrator leaves a void. I therefore describe the background of this case in more detail.

¶ 46. According to the arbitration decision, the County decided to eliminate the positions in order to take them off the tax levy and informed the director, Van Kampen, of its decision in mid-2003. As the majority notes, in the fall of 2003 LaFave and Berndt were informed that their positions were being eliminated and Vuvunas was told that her position was being reduced to part-time status and that she could choose to exercise bumping rights or be laid off. Neither LaFave nor Berndt had planned to retire when they did until they learned of the plan to eliminate their positions.

¶ 47. Van Kampen advised them that the county executive had directed him to provide the statutorily mandated services by entering into individual contracts. The County negotiated service agreements with LaFave and Berndt to provide social work after their retirement. At the direction of County corporate counsel, Van Kampen discussed setting up limited liability corporations with them.

¶ 48. After LaFave and Berndt retired and came back to work, and after Vuvunas was laid off, the Union filed a grievance pursuant to its right under the collective bargaining agreement. The parties submitted to arbitration of the case as a contract issue. Because the parties submitted a contract issue, the arbitrator limited her award to the terms of the parties' contract, and did not stray from the positions argued by the parties into the area of statutory law. There is no indication that the County raised its Wis. Stat. § 767.405 and separation of

powers arguments until the case reached the circuit court.[3]

¶ 49. The Union argued that the County violated the terms of the collective bargaining agreement and "engaged in a subterfuge resulting in performance of bargaining unit work performance pursuant to individual contracts and improper lay-off . . . ." It also asserted that the County's discussions with LaFave and

---

[3] The majority inexplicably asserts that "the arbitrator had not considered the statutory and constitutional issues Racine County presented." Majority op., ¶ 35. As noted in the text, the statutory and constitutional arguments were not presented to the arbitrator. The "evidence" that the majority adduces as support is a reference to Van Kampen's testimony in the County's postarbitration brief to the arbitrator contesting the award. However, that brief concerns only the contract dispute and makes no mention of the statutory and separation of powers arguments at issue here, indicating that the County did not raise those issues to the arbitrator. Additionally, the brief discusses Van Kampen's testimony (in which he merely mentions a statute) as part of its argument that the County did not violate the terms of the collective bargaining agreement. Rather than demonstrating that the County presented the statutory and separation of powers arguments to the arbitrator, the evidence adduced by the majority indicates that the County presented only contract issues.

Moreover, the majority takes the arbitrator to task for her statement that she made "no attempt . . . to either interpret or apply statutory law." Majority op., ¶¶ 7, 33. This incorrectly describes the arbitrator's statement. She was explicit that the parties had presented her with a contract question, and that the parties had not argued on the basis of statutory law. It is in that context that the arbitrator wrote: "Accordingly, the Award made here takes its essence entirely from the parties' Contract. There is no attempt here to either interpret or apply statutory law." The majority's implication that the arbitrator simply ignored statutory law that the parties had presented is therefore unfounded.

Berndt regarding subcontracting constituted individual bargaining. The collective bargaining agreement includes a recognition clause providing that the "County recognizes the Union as the sole and exclusive bargaining representive for all . . . Social Workers/Case Managers . . . ." According to the Union, the County orchestrated the retirements by negotiating with LaFave and Berndt individually.

¶ 50. The County maintained that it did not violate the collective bargaining agreement and that the retirements of LaFave and Berndt and the lay-off of Vuvunas were voluntary. It further argued that its discussions with LaFave and Berndt did not constitute promises for future contracts.

¶ 51. The arbitrator determined that the County improperly displaced the three positions and violated several provisions of the collective bargaining agreement, including the recognition and subcontracting provisions. She further determined that the positions had not been eliminated, but instead that the County had simply "replaced [the] bargaining unit positions with the identical service provided under individual contracts." Despite the fact that the County "narrowly focused upon the topic of sub-contracting," the arbitrator determined that the service agreements entered by Berndt, LaFave, and Engel "are not sub-contracts" insofar as they "do not provide new or temporary service or service supplemental to that being provided in part by bargaining unit members."

¶ 52. The positions, according to the arbitrator, "have not been truly eliminated." Instead, the arbitrator agreed with the Union that the County orchestrated LaFave's and Berndt's retirements and that they were motivated to retire by the County's offer to enter service agreements with them. Their work and their positions

did not change. They had the same responsibilities, had the same supervisors, were provided office space in the same area, continued to receive office supplies, maintained the same work relationship with other employees, received the same compensation, and did not provide their services to anyone other than the County. Colleagues and co-workers did not know that LaFave's and Berndt's employment status had changed.

¶ 53. With respect to Vuvunas, the arbitrator determined that even if LaFave's and Berndt's retirements were independent of the County's actions, "Vuvunas plainly was deprived of an opportunity to be fully employed in her Court Services Social Worker position" by the service agreements. This action was in direct violation of Article 27.07 of the collective bargaining agreement, which provides in relevant part:

> 27.07 Racine County reserves the right to subcontract any work normally done by bargaining unit employees, but no bargaining unit employees will be laid off or have their normal hours reduced as a direct result of such subcontracting. . . .

¶ 54. In determining that the County violated the agreement, the arbitrator relied on the testimony of Van Kampen, who "unequivocally testified that he had been directed by the County Executive to enter into Contracts with individuals to provide the statutorily required service 'off the levy.'" Van Kampen further testified that in light of the County's decision "he was very concerned with regard to how the service would be provided." In addition to being worried about how to provide the services when the County informed him of its plan, Van Kampen testified that he did not know how the services were going to be provided after the contracts expired on December 31, 2004, less than one

year after the positions were changed from bargaining unit positions to contract positions.

¶ 55. The arbitration award for the violations was that the County could no longer continue or enter agreements that displace bargaining unit positions:

> The County shall cease and desist from continuing existing Service Agreements or entering into new Agreements which displace Court Services Social Worker/Case Manager bargaining unit positions consistent with this Opinion. The Union and its members shall be made whole for damages which have been sustained including loss of dues, expenses to pursue this matter, and loss of wages and benefits without loss of seniority.

No specific remedy was set forth because the arbitrator had insufficient evidence of the extent of the Union's damages. The arbitrator was cautious so as not to "fashion[] a remedy which is either impossible or impractical to implement." The arbitrator instead noted that the award "will require discussion and perhaps some negotiation between the parties."

## II

¶ 56. Although the majority cites to the standard of review, it ignores the application of that standard. The role of reviewing courts in arbitration cases is limited, and courts "will not overturn the arbitrator's decision for mere errors of law or fact." *Madison v. Madison Prof'l Police Officers Ass'n,* 144 Wis. 2d 576, 586, 435 N.W.2d 8 (1988). It will do so only when "perverse misconstruction or positive misconduct is plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy." *Id.* (citing *Milwaukee Bd. of Sch. Dirs. v.*

*Milwaukee Teachers' Educ. Ass'n,* 93 Wis. 2d 415, 422, 287 N.W.2d 131 (1980)) (internal punctuation omitted).

¶ 57. Despite this standard of substantial deference, the majority nevertheless ignores the arbitrator's factual and legal determinations. It instead bases its arguments on claims that are belied by the arbitrator's findings.

A

¶ 58. To begin, the majority fails to address the basis of the arbitrator's decision—the process of eliminating the positions. It asserts that Van Kampen acted "after Racine County eliminated the three original positions" and filled "vacated positions" with contractors. Majority op., ¶¶ 22, 19. The basis of the arbitration award, however, is that the County did not really eliminate the positions and then subcontract for the services. Instead, the arbitrator determined that the positions remained intact, with LaFave, Berndt, and Engel doing the same work under the same conditions as was performed before.

¶ 59. Thus, it is the process of eliminating the positions and the fact that LaFave, Berndt, and Engel were not true subcontractors that is the basis of the arbitration award and the respondents' arguments. The arbitrator's decision does not address the prospect that legitimately eliminated or vacated positions could be filled with subcontractors. Indeed, the Union admitted to the circuit court that "[u]nder the collective bargaining agreement, during layoffs there can be subcontracting." Further, there is no question that prior to the events here, LaFave, Berndt, and Vuvunas were County employees subject to the collective bargaining agreement. The County conceded that point at oral argument.

¶ 60. The majority, however, has simply assumed that the determination at the heart of the arbitration award (i.e., that the County did not properly eliminate the positions) is incorrect without providing an explanation. It then answers a question that is not at issue, and which the respondents do not contest, namely, whether the director can subcontract to fill legitimately eliminated positions.

¶ 61. In fact, the arbitrator's conclusion that the County's actions are an improper attempt to circumvent the collective bargaining agreement is supported by the court of appeals decision in *County of Eau Claire v. AFSCME,* 190 Wis. 2d 298, 526 N.W.2d 80 (Ct. App. 1994). In that case a county clerk of court and register of deeds deputized their employees, and argued that the employees were therefore exempt from a collective bargaining agreement negotiated under Wis. Stat. § 111.70[4] on the ground that the employees had been deputized pursuant to Wis. Stat. §§ 59.38 and 59.50.[5] The court of appeals determined that such an action could exempt employees from the collective bargaining agreement only when the action is not an attempt at subterfuge. *Id.* at 306.

¶ 62. Similarly, the arbitrator here determined that the County's orchestration of the retirements and service agreements was merely an attempt to circumvent the collective bargaining agreement. Even if the arbitration award would conflict with § 767.405(2),

[4] Wisconsin Stat. § 111.70 sets forth the framework for collective bargaining in the municipal employment context.

[5] Wisconsin Stat. § 59.38 provides for the clerks of circuit courts to appoint deputies, and Wis. Stat. § 59.50 provides for the registers of deeds to appoint deputies.

under *County of Eau Claire*, the statutory exemption applies only where there is no subterfuge.

¶ 63. The majority tries to distinguish this case from *County of Eau Claire* on the ground that the employees in that case "were continuing employees who, other than being deputized, did not see any change in their employment status." Majority op., ¶ 26. It is difficult to discern the basis for that distinction, as the arbitrator specifically determined that, other than being contractors, LaFave and Berndt saw no change in their employment status, but instead had performed the same work, in the same offices, for the same supervisors, and for the same compensation.

B

¶ 64. By failing to focus on the actions of the County and instead attributing those actions to Van Kampen, the majority opinion again ignores the arbitrator's factual determinations. This error is particularly pernicious, as it ultimately subordinates the actions of directors like Van Kampen, who are agents of the judiciary, to the demands of counties.

¶ 65. The arbitration decision and Van Kampen's testimony make it clear that it was the County, not Van Kampen, that required the social worker positions to be filled by subcontractors. A prior decision had been made to provide the statutorily required social services with bargaining unit employees.[6] There is no indication that Van Kampen wished to have different personnel provid-

---

[6] As the majority notes, prior to the passage of § 767.405, the services were provided by the County with bargaining unit positions. After the statute was passed, the director decided to continue providing the services with the employees in the bargaining unit positions. Majority op., ¶ 19 n.10.

ing the services or to have the services provided by subcontractors rather than County employees.

¶ 66. In fact, it was the County that decided the positions would be eliminated, and only after so deciding informed Van Kampen. The arbitrator's decision indicates that Van Kampen did not welcome the changes required by the new directive. He was concerned about how to provide the services under the new regime. Contrary to the majority's suggestion that he was "exercising . . . statutory authority," Van Kampen was forced by the County (i.e., "directed by the County Executive") to use contractors rather than his longtime employees to provide the services.

¶ 67. Given that the County was directing the actions in this case, it is puzzling that the majority purports to *protect* the rights of the director and the judiciary by vacating the arbitration award. *See* majority op., ¶¶ 21–22. The parties agree, and the majority acknowledges, that under § 767.405(2) the director is free to fill the positions with County employees, independent contractors, or a mix of both. A director chose to initially employ persons pursuant to § 767.405(2)(a) by filling the positions with County employees, and the County superceded that choice by requiring Van Kampen to provide the services only by contract pursuant to § 767.405(2)(b).

---

The facts set forth by the majority in note 10 appear to conflict with the assertion that it makes a few paragraphs later. It states that "[i]f Van Kampen had initially filled the positions in question here, he clearly could have used independent contractors. The positions were not bargained-for positions, and they were created by statute." Majority op., ¶ 23. The fact remains that the director chose to exercise his discretion to use bargaining unit positions to provide the services.

¶ 68. The majority has in effect let counties constrain the statutory rights of directors under § 767.405, while apparently believing that it has protected them. The majority has been misled. It is not the collective bargaining agreement and the arbitration award that would "abrogate the director's statutory authority as the agent of the circuit court judges." Majority op., ¶ 20. It is the County.

## C

¶ 69. The majority also disregards the arbitrator's decision concerning the layoff of Vuvunas. The arbitrator determined that Vuvunas was laid off in direct violation of a collective bargaining agreement. The majority vacates the award with respect to Vuvunas, but fails to explain why the arbitrator's determination was in error.

¶ 70. The arbitrator determined that the County's actions plainly deprived Vuvunas of the opportunity to be fully employed due to the subcontracting, and that this was "in direct violation of Article 27.07 of the Collective Bargaining Agreement." This determination by the arbitrator is a straightforward interpretation of the collective bargaining agreement. Thus, it is a determination that is squarely within the arbitrator's authority to make, and courts will generally not overturn such a decision. *See Madison Prof'l Police Officers Ass'n,* 144 Wis. 2d at 585–86 (the goal of reviewing an arbitration decision is "assuring that the parties are getting the arbitration that they contracted for.")

¶ 71. The arbitrator's determination with respect to Vuvunas follows the express language of the collective bargaining agreement. Although section 27.07 provides that the County may subcontract work normally

performed by bargaining unit employees, it expressly states that "no bargaining unit employees will be laid off or have their normal hours reduced as a direct result of such subcontracting." The parties do not dispute that Vuvunas was a bargaining unit employee and they do not dispute that she was laid off. Moreover, the County concedes the reason Vuvunas was laid off was to subcontract her work in order to get it "off the levy." Her layoff, therefore, is a "direct result of such subcontracting."[7]

¶ 72. The majority notes that Vuvunas did not exercise her bumping rights, that the Union filed the grievance rather than Vuvunas, and that Vuvunas's husband retired at roughly the same time she was laid off.[8] From these facts it concludes that Vuvunas's situation is not legally distinguishable from that of LaFave and Berndt.

---

[7] The majority cites a reference in a brief to testimony that Vuvunas requested voluntary layoff rather than exercising her bumping rights, and that had she exercised her bumping rights, no employee would have been laid off. Majority op., ¶ 4, ¶ 23 n. 13. As noted above, the majority is engaged in appellate factfinding. Moreover, it has failed to explain how a voluntary layoff comports with the contract language that is at the heart of this case. The collective bargaining agreement requires that "no bargaining unit employees will be laid off or have their normal hours reduced as a direct result of such subcontracting . . . ." Here, the majority is addressing the question of whether Vuvunas's layoff violates the terms of a contract without reciting, much less examining, the language of the contract.

[8] It is unclear what the timing of Vuvunas's husband's retirement has to do with whether the County's actions in laying Vuvunas off as a result of subcontracting violated the terms of the collective bargaining agreement. The implication from the majority opinion is that she really wanted to be laid off, and that this somehow legitimizes the County's actions.

¶ 73. However, the majority's decision regarding the legal status of LaFave and Berndt appears to be that they are legitimate subcontractors based on the director's statutory authority to contract for services under § 767.405(2) and that the arbitrator's award violated that statute. Majority op., ¶¶ 22–23. Vuvunas, though, is not a subcontractor. She was laid off and the arbitrator determined that the layoff violated the collective bargaining agreement. The majority opinion addresses only the status of her replacement.

¶ 74. Moreover, the majority appears to conclude that the arbitrator erred in determining that the layoff of Vuvunas violated the collective bargaining agreement. In essence it has reviewed the decision independently of the arbitrator's determination. However, it does so without examining the language of the agreement or explaining why the arbitrator's determination, which follows the express language of the agreement, is incorrect.

¶ 75. In doing so, the majority leaves many questions unanswered. Does the collective bargaining agreement require that wrongly laid-off employees grieve on their own behalf? What does the collective bargaining agreement say about exercise of bumping rights? Does it matter? The effect of the majority's analysis on our review of arbitration decisions is unclear.

### III

¶ 76. Finally, I address the majority's unsupported claim regarding the consequences of the arbitration award. The majority asserts that the award "left [LaFave, Berndt, and Engel] without an ability to work for Racine County," majority op., ¶ 7, "putting into jeopardy the effective functioning of the judicial branch." *Id.*, ¶ 22.

¶ 77. The arbitration decision does not support this assertion. The award did not prevent LaFave, Berndt, and Engel from working for the County per se. Rather, it prevented them from doing so pursuant to contracts that displace bargaining unit positions. The award emphasized that the parties would have to discuss and negotiate in order to come to an agreement regarding remedy, and it explicitly refrained from fashioning a remedy that would be impractical to implement. The parties were therefore free to negotiate a remedy that included provisions for reinstatement or subcontracting, so long as bargaining unit positions were not eliminated.

¶ 78. The claim that the award jeopardizes the effective functioning of the judicial branch is equally unfounded. To the contrary, it is the County's actions that undermine its effective function. Here, the County wanted the collectively bargained for positions to be off the tax levy. The County, not the circuit court judges, was orchestrating the maneuver. The County, not the arbitrator, was limiting the statutory power of the director of family court services. Contrary to § 767.405(2)(a), the director was *not* free to fill the positions with County employees. Instead the County required that the positions be filled only by subcontracting the positions. Thus, the majority's concern about effective functioning of the judiciary is more appropriately directed at the County's actions.

IV

¶ 79. For the reasons set forth, I conclude that by failing to address the process by which the County eliminated the three positions, attributing the County's actions to Van Kampen, and failing to address Vuvunas's layoff, the majority ignores the standard of

548

review and the determinations of the arbitrator. Ultimately, it also subordinates to counties the rights of the directors of family court services, who are agents of the circuit courts, to choose whether to provide services by employee pursuant to § 767.405(2)(a) or by contract pursuant to § 767.405(2)(b).

¶ 80. Accordingly, I respectfully dissent.

¶ 81. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice LOUIS B. BUTLER, JR. join this dissent.