WISCONSIN LAW ENFORCEMENT ASSOCIATION, LOCAL 1,
Petitioner-Respondent,†

v.

STATE of Wisconsin DEPARTMENT OF TRANSPORTATION,
Respondent-Appellant.

Court of Appeals

*No. 2009AP548. Submitted on briefs September 9, 2009.
—Decided December 17, 2009.*

2010 WI App 27

(Also reported in 780 N.W.2d 170.)

† Petition to Review denied 4/19/10.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *David C. Rice*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Sally A. Stix* of *Stix Law Offices*, Madison.

Before Dykman, P.J., Vergeront and Lundsten, JJ.

¶ 1. DYKMAN, P.J. The State of Wisconsin Department of Transportation (DOT) appeals from a circuit court order that vacated part of an arbitration award denying grievances submitted by the Wisconsin Law Enforcement Association, Local 1 (WLEA) after DOT disallowed meal reimbursement for state troopers and inspectors working eight-hour shifts more than fifteen miles from their headquarters. DOT argues that the arbitration award must be upheld because the arbitrator did not exceed her authority in interpreting the parties' collective bargaining agreement (CBA) to allow DOT to deny meal reimbursement during eight-hour shifts. WLEA responds that the arbitrator exceeded her authority by nullifying the meal reimbursement provision of the CBA, and argues that parts of the arbitration award that the circuit court affirmed must be vacated as

446

well. We conclude that the only issue properly raised here is whether the arbitrator acted appropriately in making the decision that the circuit court vacated. We further conclude that the arbitrator acted within her authority in interpreting the CBA to allow DOT to deny meal reimbursement during eight-hour shifts. Accordingly, we reverse with directions to affirm that part of the arbitration award.

## Background

¶ 2. The following facts are taken from the parties' stipulations and the findings of the arbitrator.[1] In 1994, DOT implemented a policy giving state troopers and inspectors working more than fifteen miles from their headquarters the option to work an eight-and-a-half-hour shift, with an unpaid thirty-minute meal break, or an eight-hour shift without a meal break. Employees who worked an eight-and-a-half-hour shift were entitled to reimbursement for the actual cost of their meals per CBA article 13/17/8,[2] while those working an

---

[1] The record on appeal does not include the parties' CBA, the memoranda setting forth policy changes, or the circuit court case cited by the arbitrator. We rely on excerpts of this material contained in the arbitration award, the parties' stipulations before the arbitrator, and the parties' agreement as to the facts on appeal.

[2] Article 13/17/8 of the CBA provides:

Employes shall be reimbursed for all actual, reasonable, and necessary amounts expended for their own meals incurred in the performance of their official duties. The performance of the employee's official duties must be at a point more than fifteen (15) miles from his/her assigned headquarters. However, exceptions to the fifteen (15) mile requirement may be granted by the agency heads or their designee(s). Employees shall be reimbursed without receipts for meals . . . .

447

eight-hour shift were eligible only for a lesser "bag meal" reimbursement of $4.00 under CBA article 13/17/10.[3]

¶ 3. In 1996, individual troopers and inspectors sued DOT, demanding pay for the half-hour meal break during eight-and-a-half-hour shifts because they were required to remain on-duty during the breaks. While that case was pending, the parties negotiated a pilot project allowing all troopers and inspectors to decide on a daily basis whether to work an eight-hour shift without a meal break or an eight-and-a-half-hour shift with a thirty-minute unpaid meal break. The trial court issued a decision in March 2003, agreeing with the employees and holding that DOT must pay state inspectors and troopers for breaks if they are required to remain on-duty.

¶ 4. In response, on April 3, 2003, DOT issued a memorandum reflecting its unilateral decision to schedule all state troopers and inspectors for eight-hour shifts, and to allow only a $4.00 reimbursement for a "bag meal" under CBA article 13/17/10 during those shifts. DOT implemented the policy on May 5, 2003, and state troopers and inspectors began filing grievances. WLEA submitted representative grievances for arbitration.

¶ 5. The parties stipulated to the following issues:

1. Did the Employer violate the CBA when on May 5, 2003, it terminated the option for State Troopers and Inspectors to work an 8–1/2 hour shift with a 1/2 hour unpaid meal period? If so, what shall the remedy be?

---

[3] Article 13/17/10 of the CBA provides: "As of the effective date of this Agreement, employes shall be paid a flat rate of four dollars ($4.00) for each bag meal."

2. Did the Employer violate the CBA by limiting the daily meal reimbursement to State Troopers and Inspectors to a maximum of $4, the rate for a bag lunch under [article] 13/17/10? If so, what shall the remedy be?

3. Did the Employer violate the CBA by denying State Troopers and Inspectors who perform their official duties more than 15 miles from their assigned headquarters reimbursement for meals as provided for in [article] 13/17/8? If so, what shall the remedy be?

WLEA submitted an additional issue for arbitration: "Did the Employer violate the CBA by not allowing troopers and inspectors to take a ½ hour meal period during straight 8–hour shifts with the understanding they would not be relieved from duty? If so, what shall the remedy be?"

¶ 6. The arbitrator determined that WLEA had not established that DOT violated the CBA through "unilateral disallowance of the option of the 8–1/2 hour duty shift, with the attendant meal reimbursement." She explained that although WLEA "offered evidence of a long standing, clear and consistent practice, mutually agreed upon by both parties, of permitting Troopers and Inspectors who worked 15 miles or more from their assigned headquarters to elect an 8–1/2 hour shift and thereby be eligible for a meal reimbursement per [CBA article] 13/17/8," it was the circuit court's opinion in the previous case, not DOT, that eliminated this option. The arbitrator also rejected WLEA's argument that DOT violated Negotiating Note 34 to the CBA, which stated that inspectors working more than fifteen miles from headquarters had the option of an eight-and-a-half-hour day with an unpaid break, because that Note

had been "declared invalid . . . by [a] tribunal of competent jurisdiction" per CBA article 15/2/1.

¶ 7. Next, the arbitrator addressed WLEA's argument that DOT's decision to limit employees to eight-hour shifts violated CBA article 6/2/2, which states that "[w]ork schedules will not be changed to avoid the payment of overtime." The arbitrator determined that DOT properly exercised its right under article 6/2/2 to determine base schedules in establishing eight-hour shifts.

¶ 8. The arbitrator then addressed the parties' dispute over meal reimbursement. She rejected WLEA's argument that DOT's decision to deny actual meal reimbursement requests from state troopers and inspectors working more than fifteen miles from their headquarters rendered CBA article 13/7/8 a nullity. Instead, she determined that DOT's April 3, 2003 memorandum did not eliminate all actual meal reimbursement under article 13/17/8, because troopers and inspectors were still eligible for that reimbursement during meetings and training, as determined by management. She also determined that troopers and inspectors are only eligible for actual meal reimbursement under article 13/17/8 if they are eligible for "meals incurred in the performance of their official duties." Because an eight-hour shift does not include a paid meal break, the arbitrator explained, DOT was not required to provide meal reimbursement under article 13/17/8 for troopers and inspectors working eight-hour shifts. Finally, the arbitrator rejected WLEA's argument that DOT's new policy on meal break reimbursement violated the CBA's non-discrimination clause, article 11/1/1.

¶ 9. WLEA moved the circuit court to vacate the arbitrator's decision under WIS. STAT. §§ 788.10 and

788.13 (2007–08),[4] and DOT moved the court to confirm the award under WIS. STAT. § 788.09. The circuit court confirmed the part of the arbitrator's award that denied WLEA's grievance regarding DOT's eliminating eight-and-a-half-hour shifts. It also confirmed the part of the arbitrator's award denying WLEA's discrimination claim. However, the circuit court vacated the part of the arbitrator's decision which concluded that DOT properly denied state troopers and inspectors working eight-hour shifts more than fifteen miles from head-quarters actual meal cost reimbursement under CBA article 13/17/8 because, the court decided, that finding effectively nullified article 13/17/8. DOT appeals from the court's decision vacating the arbitrator's determination that DOT properly denied its employees working eight-hour shifts more than fifteen miles from headquarters actual meal reimbursement under article 13/17/8.

*Standard of Review*

¶ 10. We follow "several well-settled rules governing review of arbitrators' decisions. An arbitrator's award is presumptively valid, and it will be disturbed only when its invalidity is demonstrated by clear and convincing evidence." *Nicolet High Sch. Dist. v. Nicolet Educ. Ass'n*, 118 Wis. 2d 707, 712, 348 N.W.2d 175 (1984). Because "[a] final and binding arbitration clause signifies that the parties to a labor contract desire to have certain contractual disputes determined on the merits by an impartial decision-maker whose determination the parties agree to accept as final and binding,"

---

[4] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

we pay "[g]reat deference . . . to the arbitrator's award as the product of the initial bargain of the parties." *Id.* at 713 (citation omitted). "The parties [have] bargain[ed] for the judgment of the arbitrator—correct or incorrect—whether that judgment is one of fact or law." *Id.* (citation omitted). We therefore review not for whether the arbitrator was correct, but for whether "the arbitrator exceeded his [or her] authority by, in effect, undertaking to amend the contract, to substitute his [or her] own discretion for that vested in one or another of the parties, or . . . to dispense his [or her] own brand of justice," in which case we must vacate the award. *Id.* Finally, "the power of the arbitrator is derived solely from the contract, and that authority is, therefore, limited by the terms of the contract." *Id.* at 714.

### Discussion

¶ 11. At the outset, the parties dispute which issues have been properly raised in this appeal. DOT contends that it has appealed only from the part of the circuit court order vacating the arbitrator's decision on the parties' third stipulated issue: "Did the Employer violate the CBA by denying State Troopers and Inspectors who perform their official duties more than 15 miles from their assigned headquarters reimbursement for meals as provided for in [article] 13/17/8?" DOT argues that, because WLEA has not cross-appealed from the parts of the circuit court's order that confirmed the remainder of the arbitrator's decisions, WLEA may not raise those arguments in response to DOT's appeal. Thus, DOT asserts, only the arbitrator's decision that DOT did not violate the CBA by denying employee requests for meal reimbursement under ar-

ticle 13/17/8 during eight-hour shifts more than fifteen miles from headquarters is before us.

¶ 12. WLEA responds that it is not precluded from arguing that we must reverse the parts of the arbitration award that the circuit court confirmed, despite the fact that it has not cross-appealed from the circuit court order to confirm those parts of the award. WLEA contends that we may review the entire arbitration award on DOT's appeal from the circuit court's order to vacate one of the arbitrator's decisions because our standard of review requires that we review the arbitration award rather than the circuit court order. *See Madison Teachers Inc. v. Madison Metro Sch. Dist.*, 2004 WI App 54, ¶ 12, 271 Wis. 2d 697, 678 N.W.2d 311. We disagree.

¶ 13. To support its contention, WLEA relies on our statement in *Madison Teachers* that our review of the arbitrator's decision required us to review the respondent's arguments. *See id.* But our decision to address the respondent's arguments in *Madison Teachers* followed from the procedural structure of the case: the respondent argued that we should affirm the circuit court order granting its motion to vacate the arbitration award. *Id.* Thus, to review the arbitration award that was the subject of the appeal, we had to review the respondent's arguments to vacate the award.

¶ 14. Unlike the respondents in *Madison Teachers*, WLEA is seeking to reverse portions of the circuit court order from which no party has appealed. But to seek an appellate decision reversing the parts of the circuit court order that are adverse to it, WLEA was required to file a cross-appeal. *See* WIS. STAT. § 809.10(2)(b) ("A respondent who seeks modification of the . . . order appealed from . . . shall file a notice of

cross-appeal within the period established by law . . . .). Because WLEA did not file a notice of cross-appeal, we cannot address its arguments that are outside the scope of DOT's appeal. *See First Wisconsin Nat'l Bank of Madison v. Nicholaou*, 87 Wis. 2d 360, 365, 274 N.W.2d 704 (1979) (explaining that the supreme court "has prescribed time limits for the filing of notices of appeal and cross-appeal" and "that the time for filing a notice of appeal or cross-appeal of a final judgment or order in a civil appeal is not subject to enlargement").

¶ 15. We therefore turn to the only issue properly before us: whether the arbitrator exceeded her authority in finding that DOT did not violate CBA article 13/17/8 by denying meal reimbursement to employees working eight-hour shifts more than fifteen miles from headquarters. Article 13/17/8 provides:

> Employes shall be reimbursed for all actual, reasonable, and necessary amounts expended for their own meals incurred in the performance of their official duties. The performance of the employee's official duties must be at a point more than fifteen (15) miles from his/her assigned headquarters. However, exceptions to the fifteen (15) mile requirement may be granted by the agency heads or their designee(s). Employees shall be reimbursed without receipts for meals . . . .

After determining that DOT properly eliminated the option of eight-and-a-half-hour shifts, the arbitrator said:

> First, the April 3, 2003 memo at issue did not eliminate all 8-1/2 hour[] shifts or all meal breaks. Rather, it specifically stated that management would determine the "applicability of a meal break during meetings and training." Troopers and Inspectors are still eligible for a reimbursement under [article]

13/17/8, although not when working the straight 8–hour shift without a meal break.

> More importantly, however, it is noteworthy that to qualify for any form of reimbursement for "meals incurred in the performance of their official duties" an employee must be eligible for a meal in the first place. Here, the parties have negotiated an Agreement in which an 8–hour shift contains no paid meal break, and an employee's two 15–minute breaks cannot be combined to form one. Thus, without a meal break there is no obligation to reimburse for a meal.

(Footnote omitted.) Thus, the arbitrator determined that DOT did not nullify article 13/17/8 by denying claims for meal reimbursement during eight-hour shifts because that provision could be implicated during training and meetings; and that employees working eight-hour shifts were not eligible for meal reimbursement under article 13/17/8 because employees were not eligible for a meal break during an eight hour shift.

¶ 16. DOT argues that the arbitrator acted within her authority in interpreting CBA article 13/17/8 to allow meal reimbursement only for eight-and-a-half-hour shifts. It contends that, although article 13/17/8 does not have any language regarding shift lengths, article 13/17/8 is rendered ambiguous when read together with CBA article 13/17/10, which provides that "employes shall be paid a flat rate of four dollars ($4.00) for each bag meal." DOT argues that the two provisions create an ambiguity regarding when an employee is eligible for a $4.00 reimbursement for a bag meal and when an employee is eligible for actual meal reimbursement. *See Madison Teachers*, 271 Wis. 2d 697, ¶ 15 ("In the context of construing terms of a collective bargaining agreement, arbitrators have utilized rules, standards, and principles borrowed from the jurisprudence

developed by courts to resolve disputes over the meaning of terms in contracts."); *Estate of Schultz v. Schultz*, 194 Wis. 2d 799, 805, 535 N.W.2d 116 (Ct. App. 1995) (contract provisions must be read in context, not in isolation). Thus, DOT argues, the arbitrator properly interpreted the ambiguous language in light of the parties' past practice of limiting meal reimbursement under article 13/17/8 to eight-and-a-half-hour shifts. *See Cutler-Hammer, Inc. v. Industrial Comm'n*, 13 Wis. 2d 618, 625, 109 N.W.2d 468 (1961) (holding that past practice is relevant in interpreting ambiguous language in collective bargaining agreements).

¶ 17. WLEA responds that CBA article 13/17/8 unambiguously requires DOT to reimburse employees for meals when the employee is stationed more than fifteen miles from headquarters, and that nothing in article 13/17/8 predicates meal reimbursement on an eight-and-a-half-hour shift. It argues that article 13/17/8 provides only two prerequisites for meal reimbursement: a meal incurred during an employee's duties, and that the employee was stationed more than fifteen miles from headquarters. Thus, WLEA asserts, the arbitrator exceeded her authority by eliminating meal reimbursement under article 13/17/8, and therefore her decision was a "perverse misconstruction" of the CBA that must be vacated.[5] *See Madison Teachers*, 271 Wis. 2d 697, ¶¶ 9, 14 (we will reverse an arbitration award that demonstrates "perverse misconstruc-

---

[5] WLEA also argues that the arbitrator ordered the parties to maintain past practice without a basis in the CBA for doing so, contrary to *Milwaukee Professional Firefighters v. City of Milwaukee*, 78 Wis. 2d 1, 253 N.W.2d 481 (1977). However, the arbitrator did not state that the parties were required to maintain past practice; she looked to past practice to aid her interpretation of CBA article 13/17/8.

tion," and "an arbitrator is without authority to disregard or modify plain or unambiguous provisions in the collective bargaining agreement").

¶ 18. Under WIS. STAT. § 788.10(1)(d), we will vacate an arbitration award if "the arbitrator[] exceeded [his or her] powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." Thus, we review the arbitrator's decisions not for whether they are factually correct or reflect a proper interpretation of the parties' contract, but only for whether they reflect that the arbitrator acted within her power to interpret the CBA. *See Madison Teachers*, 271 Wis. 2d 697, ¶¶ 9, 15. This requires that we determine whether the arbitrator's decision—that the CBA allowed DOT to deny meal reimbursement to state troopers and inspectors working an eight-hour shift more than fifteen miles from headquarters—resulted from her *interpreting* CBA article 13/17/8 in light of past practice, or from her *modifying* the CBA by eliminating article 13/17/8, "tenuous as the distinction may be as a practical matter." *Cf. Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 186 (7th Cir. 1985) (recognizing difficulty in distinguishing between "[i]nferring an implied condition . . . [and] creating one").

■

¶ 19. WLEA argues that the arbitrator's decision that DOT may deny meal reimbursement to state troopers and inspectors working eight-hour shifts more than fifteen miles from headquarters demonstrates that she modified the contract by eliminating CBA article 13/17/8, because article 13/17/8 requires meal reimbursement regardless of shift length. But the arbitrator did not eliminate article 13/17/8; she interpreted article 13/17/8 to mean that employees were eligible for

meal reimbursement only if they were entitled to a meal break. The CBA has provisions providing for meal reimbursement and for bag meal reimbursement, and the parties stipulated that long-standing DOT policy was to provide meal reimbursement only when employees received a thirty-minute meal break.[6] The arbitrator could have determined that the provisions together rendered article 13/17/8 ambiguous, and then turned to the parties' past practice to resolve that ambiguity.[7] *See*

[6] WLEA argues that DOT "invents a past practice" when it argues that allowing meal reimbursement to state troopers and inspectors working eight-hour shifts more than fifteen miles from headquarters would be contrary to past practice. However, the parties stipulated—and the arbitrator found—that the long-standing policy of DOT was to reimburse for meals only when state troopers and inspectors worked an eight-and-a-half-hour shift with a half-hour meal break.

[7] Although the arbitrator did not state that she found CBA article 13/17/8 ambiguous or that she construed article 13/17/8 in light of the parties' past practice of limiting meal breaks to eight-and-a-half-hour shifts, we have explained that "[w]hatever the arbitrator's view, we do not vacate [her] decision simply because [she] did not explain [her] view." *See Madison Teachers Inc. v. Madison Metro Sch. Dist.*, 2004 WI App 54, ¶ 31, 271 Wis. 2d 697, 678 N.W.2d 311 (upholding arbitration award when arbitrator did not explain reason for award, but record supported alternative theories arbitrator could have utilized). Stated another way, we do not vacate an arbitration award merely because we *could* interpret the arbitrator's opinion to be based on improper reasoning; while "[i]t may be that in [her] heart of hearts the arbitrator" based her decision on impermissible reasons, "we cannot peer into [her] heart, let alone [her] heart of hearts; and viewed as an interpretation of the contract, the award is not so *outré* that we can infer that it was driven by . . . [reasoning] beyond the limits of the contract." *See Ethyl Corp. v. United Steelworkers of America*, 768 F.2d 180, 187 (7th Cir. 1985).

458

*Madison Teachers*, 271 Wis. 2d 697, ¶ 15 ("An arbitrator's construction of ambiguous terms in a collective bargaining agreement is within the arbitrator's authority[,] . . . . [and he or she] may consider various sources, including . . . past practice."). Thus, WLEA's argument "just amounts to saying that the arbitrator may have been wrong, maybe even clearly wrong; it does not show that [s]he was doing something other than interpreting the contract." *See Ethyl Corp.*, 768 F.2d at 185. As the Seventh Circuit has explained:

> Whenever an arbitrator misreads a contract, it is possible to say that his [or her] award fails to draw its essence from the contract; that the ground of the award is not the contract but the arbitrator's misreading. But so long as the award is based on the arbitrator's interpretation—unsound though it may be—of the contract, it draws its essence from the contract . . . . It is only when the arbitrator *must* have based his [or her] award on some body of thought, or feeling, or policy, or law that is outside the contract . . . that the award can be said not to draw its essence from the collective bargaining agreement.

*Id.* at 184–85 (citation omitted). Because such is not the case here, we must reverse and remand with directions for the circuit court to confirm the arbitrator's award.

*By the Court.*—Order reversed and cause remanded with directions.