MILWAUKEE DISTRICT COUNCIL 48,
American Federation of State, County &
Municipal Employees, AFL-CIO,
Plaintiff-Appellant,

v.

MILWAUKEE COUNTY and Scott Walker,
Defendants-Respondents,†

v.

MILWAUKEE COUNTY BOARD OF SUPERVISORS, Plaintiff.

MILWAUKEE DISTRICT COUNCIL 48, American Federation of State, County & Municipal Employees, AFL-CIO, Petitioner-Appellant,

v.

MILWAUKEE COUNTY, Respondent-Respondent.

Court of Appeals

*No. 2010AP535. Submitted on briefs December 7, 2010.*
*—Decided December 21, 2010.*

2011 WI App 14

(Also reported in 795 N.W.2d 777.)

† Petition for Review Filed.

On behalf of the plaintiff-appellant and petitioner-appellant, the cause was submitted on the briefs of *Mark A. Sweet* of *Sweet and Associates, LLC*, Milwaukee.

On behalf of the defendant-respondent Scott Walker, the cause was submitted on the brief of *Alan M. Levy* of *Lindner & Marsack, S.C.*, Milwaukee.

On behalf of the defendant-respondent and respondent-respondent Milwaukee County, the cause was submitted on the brief of *Timothy R. Schoewe* and *John F. Jorgensen*, corporation counsel of Milwaukee.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Milwaukee District Council 48, American Federation of State, County and Municipal Employees appeals the final orders in consolidated

Milwaukee County circuit-court cases that, respectively, vacated and refused to confirm an arbitration award determining that a reduction in work hours for members of District Council 48 violated the union's collective-bargaining contract with Milwaukee County. We reverse both orders.

## I.

¶ 2. This case arises out of the unilateral attempt by Milwaukee County Executive Scott Walker to save Milwaukee County money by reducing work-week hours of employees in "those departments under my direction" with the exception of those "working in direct patient care or correctional/detention staff."[1] According to Walker's order, signed May 14, 2009, and denominated "Reduced Workweek – 2009" (uppercasing omitted), Walker determined that there was a "fiscal crisis due to a projected $14.9 million deficit in the 2009 budget" for Milwaukee County, and that it was thus "imperative that urgent emergency action be taken to reduce expenditures for 2009 within the remainder of the budget year." The order directed department heads to "schedule the employees who report to them to temporarily work 5 hours less each week commencing June 28, 2009 during the course of this fiscal emergency." The order recited that it was to "remain in full force and effect until further order of the Milwaukee County Executive."

¶ 3. The arbitration process was started by the filing of a grievance under the union's collective-bargaining contract with Milwaukee County. The grievance was submitted by David Eisner, who was the local union's president and who was on leave from his

---

[1] Scott Walker was elected governor on November 2, 2010.

County employment. The parties agree that his work-week hours were not affected by the Walker order. The grievance is on a form prescribed by the collective-bargaining contract and indicates by hand-printing on lines asking for "Name of Grievant" and "Title of Grievant" that it was from "David Eisner, District Council 48, All Bargaining Unit Members." In that part of the form asking "What happened to cause your Grievance?," the hand-printed entry reads: "On or about 5–14–09, County Executive Scott Walker notified bargaining unit members that effective 6–28–09, he was temporarily reducing certain employee's [*sic*] workweek to 35 hours. This unilateral action by the county executive is in violation of the contract, county ordinances, civil service rules, the Municipal Employment Relations Act, and past practices." (Uppercasing omitted.) In a place on the form for "Signature of Grievant" are the handwritten names "David Eisner" and "Kurt Zwicker." None of the parties tell us in their appellate briefs who "Kurt Zwicker" is.

¶ 4. The Arbitrator found that under Walker's order "[a]bout 1,800 bargaining unit employees were slated to have their hours reduced," and that this would save "[a]n estimated $4.5 million" if the reduced-hours order was in effect "from June 28 to the beginning of 2010." None of the parties dispute this finding. The Arbitrator also found:

- This was "the first time that the County has reduced the hours of bargaining unit employees from 40 to 35 hours a week."

- The County indicated that the reduced-hours "policy will end before the start of the second pay period of 2010 starting December 27[th] (pay period 02 2010) or when the fiscal crisis is ended for 2009."

(Bolding omitted.) None of the parties dispute these findings either. The Arbitrator recognized that the collective-bargaining contract did not guarantee a "40–hour work week," but also did "not expressly address whether the County is free to reduce the standard 40–hour work week which has been in effect since at least 1991." The Arbitrator accepted a determination in a 2004 arbitration award by Sherwood Malamud that, as phrased by the Arbitrator here, "the County could reduce hours on a 'temporary' basis but not on a 'permanent' basis."

¶ 5. The 2004 Malamud Award upheld a proposed, but not implemented, "temporary" reduction of work-week hours from forty to thirty-five, assuming, "without deciding, that four weeks is a temporary period." The Malamud Award, however, did not decide how long the reduction would have to last to no longer be "temporary" because both the Union and the County requested that it not do so. The Malamud Award noted, though, that the County could not "unilaterally and permanently reduce the hours of full time employees."

¶ 6. The substantive issue in the current arbitration was whether the reduction in work-week hours imposed by Walker's order was "temporary" or "permanent." In attempting to discern from the collective-bargaining contract the outer boundaries of "temporary," the Arbitrator looked to sections 1.05 and 2.11(1) in the collective-bargaining contract. Section 1.05, the "Management Rights" provision (uppercasing omitted), permits the County to use "[t]emporary help agency employees" to do work that "has historically been performed by the members of the bargaining unit" but not "for more than 45 days." Section 2.11(1) permits employees to be "assigned to perform duties of a higher

classification for which they are qualified for a period not in excess of 45 days." In light of these provisions, the Arbitrator wrote:

> While that dividing line [between "temporary" and "permanent"] may be difficult to ascertain, the parties in Section 1.05 have defined temporary as 45 days or less for the purpose of using [temporary-help] agency staff to fill vacancies, and they in Section 2.11(1) agreed that temporary job assignments for bargaining employees cannot be more than 45 working days.
>
> For the purpose of this proceeding, I find that the planned reduction in hours is permanent because it was slated to greatly exceed 45 days since the County's Department of Administrative Services has acknowledged that the reduction in hours can last until the end of the year, as have budget officials.

(Parenthetical record references and names of budget officials omitted.) Thus, the Arbitrator concluded that "[t]he situation here therefore is markedly different from the one before Arbitrator Malamud which involved a possible 4 weeks reduction in hours which, in fact, never took place." The Arbitrator then turned to whether the "permanent" reduction in work-week hours, that is, one "slated to greatly exceed 45 days," was permitted under the collective-bargaining contract. As we have seen, the Arbitrator determined that such a "permanent" reduction in work-week hours was not permitted. He reasoned, in essence, as follows:

- Although the collective-bargaining contract's "Management Rights" section, section 1.05, permits "The County of Milwaukee . . . to release employees from duties because of . . . lack of funds," section 17.28 of the Milwaukee County General Ordinances provides that "[a]n increase or decrease in . . . employe [sic] hours in a given classification can be effectu-

194

ated after adoption of the annual budget only upon passage of a resolution by the county board." No such resolution was passed by the Milwaukee County Board of Supervisors.

- Although section 1.05 of the collective-bargaining contract could be read to trump Ordinance section 17.28 because section 8.02 of the collective-bargaining contract declares that "[t]o the extent that the provisions of this Agreement are in conflict with existing ordinances, [or] resolutions . . . the provisions of the contract will prevail," the collective-bargaining contract does not say that it trumps state statutes. The Arbitrator found that this was significant because WIS. STAT. § 59.17(2) requires the county executive to "take care that every county ordinance . . . is observed, enforced and administered within his or her county if the ordinance . . . is subject to enforcement by the county executive or any person supervised by the county executive." Further, by virtue of § 59.17(2)(a), the county executive is to "[c]oordinate and direct all administrative and management functions of the county government *not otherwise vested by law in other elected officials.*" (Emphasis added.) The Arbitrator reasoned that Ordinance section 17.28 is such a carve-out and requires the concurrence of the Milwaukee County Board of Supervisors before there may be a "decrease in . . . employe [*sic*] hours."

- Thus, the Arbitrator held that by virtue of WIS. STAT. §§ 59.17(2) and 59.17(2)(a), "the County is bound by Ordinance 17.28 and that the employees herein cannot have their hours reduced absent a County Board resolution to that effect."

As noted, the circuit court vacated the Award.

195

## II.

¶ 7. Arbitration in Wisconsin is governed by Wis. Stat. ch. 788, The Wisconsin Arbitration Act, § 788.17. Section 788.10(1) governs the limited scope of a court's review of an arbitration award:

> In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:
>
> (a) Where the award was procured by corruption, fraud or undue means;
>
> (b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;
>
> (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;
>
> (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

Chapter 788 applies to contracts to arbitrate that were made on or after June 19, 1931. Wis. Stat. § 788.18. Limited judicial oversight of arbitration awards was also the pre-Act law. *See Koepke v. E. Liethen Grain Co.,* 205 Wis. 75, 77–78, 236 N.W. 544, 545 (1931) ("Contentions such as that the arbitrators misconceived the real issue as to responsibility for an item of damage, or that they failed to duly regard the technical legal requirements as to satisfying the burden of proof, or otherwise decided an issue contrary to law or the technically

relevant or competent evidence, do not warrant vacating their award.").

¶ 8. In assessing appeals challenging an arbitration award, we review the award and not the circuit court's decision. *Wisconsin Dep't of Employment Relations v. Wisconsin State Bldg. Trades Negotiating Committee*, 2003 WI App 178, ¶ 17, 266 Wis. 2d 512, 523, 669 N.W.2d 499, 504. As seen from WIS. STAT. § 788.10(1) and long-standing law before its enactment, our review of an arbitration award is severely circumscribed because arbitration awards are "presumptively valid." *Milwaukee Bd. of School Directors v. Milwaukee Teachers' Ed. Ass'n*, 93 Wis. 2d 415, 422, 287 N.W.2d 131, 135 (1980). Thus, *Racine County v. International Ass'n of Machinists and Aerospace Workers Dist. 10, AFL-CIO*, 2008 WI 70, ¶ 11, 310 Wis. 2d 508, 518–519, 751 N.W.2d 312, 317 recently recognized:

> The standard of review when reviewing an arbitrator's award generally is very limited. When a court is reviewing an arbitrator's award, its function is essentially supervisory in nature, to ensure that the parties to the collective bargaining agreement received the arbitration process for which they bargained. However, a court *must* overturn an arbitrator's award when the arbitrator exceeded his or her powers. WIS. STAT. 788.10(1)(d). An arbitrator exceeds his or her powers when the arbitrator demonstrates either "perverse misconstruction" or "positive misconduct," when the arbitrator manifestly disregards the law, when the award is illegal, or when the award violates a strong public policy. Whether the arbitrator's award meets this standard is a question of law, which a court reviews de novo.

(Quoted sources and citations omitted, except for statute, and emphasis in original.) Unlike reviewing a

decision by a court lower in the judicial hierarchy, a court may not overturn an arbitration award because the arbitrator made an error of law unless the award shows "a manifest disregard of the law." *City of Madison v. Madison Professional Police Officers Ass'n*, 144 Wis. 2d 576, 586, 425 N.W.2d 8, 11 (1988). Manifest disregard of the law does not, as Milwaukee County and Walker seem to contend, mean "wrong"; it means that the arbitrator or arbitration panel " 'understood and correctly stated the law but ignored it.' " *Lukowski v. Dankert*, 184 Wis. 2d 142, 149, 515 N.W.2d 883, 885 (1994) (quoted source omitted). Thus, "[b]ecause arbitration is what the parties have contracted for, the parties get the arbitrator's award, whether that award is correct or incorrect as a matter of fact or of law." *City of Madison*, 144 Wis. 2d at 586, 425 N.W.2d at 11. Stated another way, when parties agree to arbitrate the potential disputes between them, they contract for the *arbitrator's* resolution and not that of a judicial tribunal, whether at the circuit-court or appellate level, even though the arbitrator's resolution and rationale is seen by a court as wrong, as long as the arbitrator draws the essence of the award from the parties' contract.[2] *See Franke v. Franke*, 2004 WI 8, ¶ 24, 268 Wis. 2d 360, 374–375, 674 N.W.2d 832, 838 ("A court will, with some exceptions, confirm an arbitral award regardless of whether the award is correct or incorrect as a matter of fact or law because public policy favors arbitration as promoting the efficient resolution of disputes, and as

---

[2] This is why, contrary to Walker's contention on appeal, the Arbitrator was not bound by the circuit court's findings when it denied the Union's motion for a temporary injunction barring Walker from implementing his reduced-work-hours order. The Union has not appealed the circuit court's order denying its motion for a temporary injunction.

giving the parties what they bargained for, that is, an arbitrator's, not a court's decision."); *City of Madison*, 144 Wis. 2d at 585–586, 425 N.W.2d at 11. ("[T]he role of a reviewing court in the arbitration context is essentially supervisory, with the goal of assuring that the parties are getting the arbitration that they contracted for."); *Wisconsin Law Enforcement Ass'n, Local 1 v. State Dep't of Transp.*, 2010 WI App 27, ¶ 19, 323 Wis. 2d 444, 459, 780 N.W.2d 170, 177–178 (Ct. App. 2009) (An arbitration award draws its essence from the parties' contract.); *Employers Ins. of Wausau v. Certain Underwriters at Lloyd's London*, 202 Wis. 2d 673, 682, 552 N.W.2d 420, 424 (Ct. App. 1996) ("Appellate courts uphold an arbitrator's contract interpretation if the arbitrator's interpretation drew its essence from the contract so it was not a manifest disregard of the parties' agreement."). If the arbitration award does draw its essence from the contract, the award will be upheld even though a reviewing court may see it as "unsound." *Wisconsin Law Enforcement Ass'n*, 2010 WI App 27, ¶ 19, 323 Wis. 2d at 459, 780 N.W.2d at 177. With these well-known and restrictive standards in mind, we turn to the Respondents' contentions.

## A. *Arbitrator's jurisdiction over the grievance*

¶ 9. Milwaukee County, and Walker (by adopting the County's brief on the jurisdictional issue), contend that the grievance submitted by Eisner could not trigger the arbitration because the collective-bargaining contract in section 4.02 requires that the person submitting the grievance be personally aggrieved, and, as we have seen, Eisner was not subject to Walker's order. Specifically, the County points to the provision in the collective-bargaining contract where it "recognizes the

right of the employee to file a grievance," and that what the contract calls "Guidelines To Be Followed When Initiating A Written Grievance" provides that "[t]he employee alone or with his/her Union Representative shall" set out the nature of the grievance, including the basis and relief requested. The County also points to a 1975 "Umpire's Ruling" (uppercasing omitted) where the Umpire (a position analogous to that of the Arbitrator here) determined that a union steward did not have the right to initiate a grievance in connection with the classification of some Milwaukee County workers because the steward was "not actually aggrieved himself." The County contends that the arbitrator here was bound by the 1975 ruling under issue-preclusion principles. The circuit court agreed with these contentions. We do not.

¶ 10. The Arbitrator determined that it was "immaterial that Eisner, who signed the grievance, will not personally suffer a reduction in hours since he also filed it on behalf of 'all bargaining unit members' who are affected by the reduction in hours." Although issue-preclusion principles can apply to Arbitration awards, there are requisites that are not satisfied here:

> On balance, we conclude that the policies underlying arbitration, its consensual, final and binding nature, weigh in favor of allowing the application of preclusion doctrines, to a limited extent. Where, at a minimum, the claim, or the issue necessarily decided in the first arbitration is the same as in the second arbitration, the parties are the same, the parties have had a full opportunity to argue their respective positions to the first arbitrator and the parties have not agreed to resubmit the claim or the issue necessarily decided in the first arbitration to a second arbitration, then, the preclusion doctrines may be applied by an arbitrator or by a reviewing court.

*Dane County v. Dane County Union Local 65, AFSCME, AFL-CIO*, 210 Wis. 2d 267, 279–280, 565 N.W.2d 540, 545 (Ct. App. 1997). First, there is no indication in the 1975 Ruling that the steward's grievance specifically asserted, as does the grievance here, that it was submitted on behalf of the affected employees. Indeed, rather than specifically having to list the some "1,800 bargaining unit employees" the Arbitrator found were subject to Walker's order, and have them individually sign the grievance or file 1,800 separate grievances, the grievance gives as grievants: "All Bargaining Unit Members." Second, there is no indication that the employees involved in the 1975 grievance, but who did not file grievances on their own behalf, are among the 1,800 employees covered by Walker's order. Third, the grievance clause in the 1975 matter is different than the grievance clause here. We quote the two provisions. The first as set out in the 1975 Umpire's Report, and the second from the parties' current collective-bargaining contract:

*1975 Umpire's Report:*

A grievance shall mean any controversy which exists as a result of an unsatisfactory adjustment or failure to adjust a claim or dispute by an employee or group of employees concerning the application of wage schedules or provision relating to hours of work and working conditions. The grievance procedure shall not be used to change starting wagge [*sic*] schedules, hours of work, working conditions, fringe benefits and position classifications established by ordinances and rules which are matters processed under other existing procedures.

*Current collective-bargaining contract:*

The grievance procedure shall not be used to change existing wage schedules, hours of work, work-

ing conditions, fringe benefits and position classifications established by ordinances and rules which are matters processed under existing procedures. Only matters involving the interpretation, application or enforcement of the terms of this Agreement shall constitute a grievance.

Thus, the 1975 grievance clause focused on "a claim or dispute by an employee or group of employees" while the clause in the current collective-bargaining contract focuses on "matters involving the interpretation, application or enforcement of the terms of this Agreement." Under *Dane County's* teaching, the Arbitrator here was not bound by the 1975 Umpire's Report.

¶ 11. Further, the collective-bargaining contract *itself* makes the Arbitrator the final word on whether there is arbitration jurisdiction under the collective-bargaining contract. It provides: "If a dispute arises as to whether the issues referred to the permanent arbitrator is [*sic*] within his/her jurisdiction, the permanent arbitrator will have the authority to resolve that issue." This is a significant grant of authority to the Arbitrator by the collective-bargaining contract because it trumps the general rule on which the County relies, namely that "[t]he issue of an arbitrator's authority to arbitrate a specific dispute *often* involves a question of law which is appropriately decided by a court de novo, with no deference owed the arbitrator's conclusion regarding his or her own authority." *Wisconsin Dep't of Employment Relations*, 2003 WI App 178, ¶ 19, 266 Wis. 2d at 524, 669 N.W.2d at 505 (emphasis added). "Often," however, does not mean *invariably:* "The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is "an issue for judicial determination [u]nless the parties

202

clearly and unmistakably provide otherwise.' " *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (emphasis by *Howsam*, quoted source omitted).[3] The parties here have specifically "provided otherwise" in their collective-bargaining contract. The Arbitrator did not "manifestly disregard[] the law" in determining that he had jurisdiction over the grievance. *See Racine County*, 2008 WI 70, ¶ 11, 310 Wis. 2d at 519, 751 N.W.2d at 317.

B. *Merits of the award.*

■

¶ 12. As we have seen, whether a court agrees or disagrees with an arbitrator's legal analysis, an award based on that analysis will be upheld unless it is an outlier as described by *Racine County*: "An arbitrator exceeds his or her powers when the arbitrator demonstrates either 'perverse misconstruction' or 'positive misconduct,' when the arbitrator manifestly disregards the law, when the award is illegal, or when the award violates a strong public policy. *Id.*, 2008 WI 70, ¶ 11, 310 Wis. 2d at 519, 751 N.W.2d at 317 (quoted source omitted). Thus, as we have also already noted, an error of law will not vitiate an arbitration award that draws its essence from the parties' contract. *See City of Madison*, 144 Wis. 2d at 586, 425 N.W.2d at 11. Neither Milwaukee County nor Walker asserts that the Arbitrator engaged in "positive misconduct." As discussed below, we cannot say that the Arbitrator's analysis of the interplay between WIS. STAT. § 59.17(2) & 59.17(2)(a)

_____

[3] "Federal cases construing the Federal Arbitration Act are persuasive authority in interpreting § 788.10." *Borst v. Allstate Ins. Co.*, 2006 WI 70, ¶ 30 n.4, 291 Wis. 2d 361, 378 n.4, 717 N.W.2d 42, 51 n.4.

and section 17.28 of the Milwaukee County General Ordinances so as to trump the management-rights provision of the collective-bargaining contract, section 1.05, "manifestly disregard[ed] the law."

¶ 13. In disputing the Arbitrator's legal analysis on the interplay between WIS. STAT. §§ 59.17(2) & 59.17(2)(a) and section 17.28 of the Milwaukee County General Ordinances and its effect on section 1.05 of the collective-bargaining contract, Milwaukee County and Walker argue that section 17.28's phrase "increase or decrease in . . . employe [sic] hours in a given classification" does not mean, as the County writes in its appellate brief, a reduction in "the hours of work assigned to incumbents in positions in classifications," but rather refers "to a classification that is staffed on an hourly basis by an indeterminate number of hourly employees based on departmental needs rather than a fixed number of full-time positions." Thus, the County argues, "Walker's executive order did not increase o[r] decrease the authorized number of employe [sic] *hours in a classification established by the budget.*" (Emphasis in original.) The County points to as support for its interpretation of the ordinance the sentence that precedes the sentence on which the Arbitrator relied, and we quote the pertinent sentences in full:

> The maximum number of positions and/or the maximum number of employe [sic] hours in a given classification shall be noted by department in the annually adopted budget. An increase or decrease in the authorized number of positions or employe [sic] hours in a given classification can be effectuated after adoption of the annual budget only upon passage of a resolution by the county board.

Walker's brief joins the County's contention and, in addition, seeks to support Walker's May 14, 2009, order

by pointing to Wɪs. Sᴛᴀᴛ. § 59.60, which prevents counties and county officers from incurring obligations for which there are not sufficient funds.[4] But the mandate of § 59.60 is not the issue here; the issue here is whether under the parties' collective-bargaining contract any shortfall may be eliminated in whole or in part by unilaterally reducing the work-week hours of the Union's members. Further, as we have already discussed at length, the parties' collective-bargaining contract vests in the Arbitrator the resolution of whether Walker's order may seek to lessen a budget shortfall by reducing the work-week hours of the Union's members.

---

[4] Wɪsᴄᴏɴsɪɴ Sᴛᴀᴛ. § 59.60(12) provides:

No payment may be authorized or made and no obligation incurred against the county unless the county has sufficient appropriations for payment. No payment may be made or obligation incurred against an appropriation unless the director first certifies that a sufficient unencumbered balance is or will be available in the appropriation to make the payment or to meet the obligation when it becomes due and payable. An obligation incurred and an authorization of payment in violation of this subsection is void. A county officer who knowingly violates this subsection is jointly and severally liable to the county for the full amount paid. A county employee who knowingly violates this subsection may be removed for cause. This subsection does not prohibit contracting for capital improvements being financed wholly or partly by the issuance of bonds or prevent the making of a contract or lease providing for the payment of funds at a time beyond the end of the fiscal year in which the contract or lease is made. The board shall make or approve by resolution each contract, lease or other obligation requiring the payment of funds from the appropriations of a later fiscal year or of more than one fiscal year.

It thus makes no difference if courts disagree with the Arbitrator's analysis or even if that analysis is "wrong."[5]

¶ 14. Insofar as whether the Award violates "a strong public policy," *see Racine County*, 2008 WI 70, ¶ 11, 310 Wis. 2d at 519, 751 N.W.2d at 317, the Award does not run afoul of that exception to the invulnerability of arbitration awards because reasonable persons might disagree whether Walker's order was the appropriate way of making up a budget shortfall, especially in light of the fact that the Milwaukee County Board of Supervisors has not passed the resolution that the Arbitrator determined would permit Walker to do what he did. This is clear from the supreme court's analysis earlier this year of an arbitration award's public-policy implications:

> It is a rare occasion for this court to overturn an arbitration award on public policy grounds. The public policy exception to the general rule of judicial deference should be narrowly construed and limited to situations where the public policy "is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests."

*Sands v. Menard, Inc.*, 2010 WI 96, ¶ 50, 328 Wis. 2d 647, 787 N.W.2d 384, 397 (quoted source omitted). *Sands* overturned that aspect of an arbitration award that forced a lawyer on a reluctant client because the

---

[5] We thus do not decide whether we would agree with the Arbitrator's legal analysis if this were presented to us on a *de novo* review. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed); *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the "narrowest possible ground").

attorney-client "relationship was irretrievably broken" and if the lawyer accepted the award's remedy of reinstatement she "would be forced to violate her ethical obligations as an attorney." *Id.*, 2010 WI 96, ¶¶ 2, 49, 57, 70, 328 Wis. 2d at ___, 787 N.W.2d at 387, 397, 399, 401. Significantly, even in *Sands*, three justices would have upheld the arbitration award in light of the general invulnerability of such awards. *Id.*, 2010 WI 96, ¶ 112, 329 Wis. 2d at ___, 787 N.W.2d at 410–411 (Abrahamson, Ch. J., dissenting).

### III.

¶ 15. Under the governing standards that circumscribe our review of arbitration awards, the Award here must be confirmed. *See* WIS. STAT. § 788.09 (On a timely application, a court "must" enter an "order confirming the award" "unless the award is vacated, modified, or corrected under s. 788.10 or 788.11."). Accordingly, we remand this matter to the circuit court with directions that it confirm the Award. *See* WIS. STAT. § 808.09.

*By the Court.*—Orders reversed and cause remanded with directions.